Nebraska Supreme Court Online Library
www.nebraska.gov/courts/epub/
03/11/2016 08:15 AM CST

SHAMECKA HOLLOWAY, APPELLANT, V.
STATE OF NEBRASKA ET AL., APPELLEES.
___ N.W.2d ___

Filed March 11, 2016.    No. S-15-280.

1. **Motions to Dismiss: Appeal and Error.** A district court's grant of a
   motion to dismiss is reviewed de novo.
2. **Motions to Dismiss: Immunity: Appeal and Error.** An appellate court
   reviews de novo whether a party is entitled to dismissal of a claim based
   on federal or state immunity, drawing all reasonable inferences for the
   nonmoving party.
3. **Statutes.** Statutory interpretation presents a question of law.
4. **Tort Claims Act: Liability.** In cases where the facts are undisputed,
   the application of the discretionary function exemption of the State Tort
   Claims Act presents a question of law.
5. **Pretrial Procedure: Appeal and Error.** Decisions regarding discovery
   are directed to the discretion of the trial court, and will be upheld in the
   absence of an abuse of discretion.
6. **Tort Claims Act: Liability.** A state actor's performance or nonper-
   formance of a discretionary function cannot be the basis of liability
   under the State Tort Claims Act.
7. **Tort Claims Act.** A court engages in a two-step analysis to determine
   whether the discretionary function exception of the State Tort Claims
   Act applies. First, the court must consider whether the action is a matter
   of choice for the acting employee. If the court concludes that the chal-
   lenged conduct involves an element of judgment, it must then determine
   whether that judgment is of the kind that the discretionary function
   exception was designed to shield.
8. **Statutes: Words and Phrases.** Generally, the word "shall" in a statute
   is mandatory.
9. ____: ____. The word "may" when used in a statute will be given its
   ordinary, permissive, and discretionary meaning unless it would mani-
   festly defeat the statutory objective.

10. **Tort Claims Act.** The purpose of the discretionary function exception is to prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.

11. ____. The discretionary function exception extends only to basic policy decisions made in governmental activity, and not to ministerial activities implementing such policy decisions.

12. ____. The discretionary function exception does not extend to the exercise of discretionary acts at an operational level, where there is no room for policy judgment.

13. ____. It is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case.

14. **Motions to Dismiss: Pleadings.** To prevail against a motion to dismiss for failure to state a claim, a plaintiff must allege sufficient facts, accepted as true, to state a claim to relief that is plausible on its face.

15. **Actions: Pleadings.** In cases in which a plaintiff does not or cannot allege specific facts showing a necessary element, the factual allegations, taken as true, are nonetheless plausible if they suggest the existence of the element and raise a reasonable expectation that discovery will reveal evidence of the element or claim.

16. ____: ____. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

17. **Motions to Dismiss: Pleadings: Appeal and Error.** When reviewing an order dismissing a complaint, an appellate court accepts as true all facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the plaintiff's conclusion.

18. **Actions: Motions to Dismiss.** For purposes of a motion to dismiss, a court is not obliged to accept as true a legal conclusion couched as a factual allegation, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.

19. **Employer and Employee: Negligence: Liability.** Under the doctrine of respondeat superior, an employer is held vicariously liable for the negligent acts of an employee committed while the employee was acting within the scope of the employer's business.

20. ____: ____: ____. If an employee is not liable, the employer cannot be liable under the doctrine of respondeat superior.

21. **Mental Health: Health Care Providers: Liability.** A mental health practitioner or psychologist is not liable for failing to warn of a patient's threatened violent behavior unless the patient has communicated to the practitioner a serious threat of physical violence to a reasonably identifiable victim.

22. **Negligence.** The question whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular situation.

23. \_\_\_\_. There is no duty to control the conduct of a third person as to prevent him or her from causing physical harm to another unless a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct.

Appeal from the District Court for Douglas County: J Russell Derr, Judge. Affirmed.

Terrence J. Salerno and Danny C. Leavitt for appellant.

Jonathan J. Papik and Andrew D. Strotman, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellee Correct Care Solutions.

Douglas J. Peterson, Attorney General, David A. Lopez, Ryan S. Post, and Andrew T. LaGrone, Senior Certified Law Student, for appellees State of Nebraska, Department of Correctional Services, Robert Houston, Cameron White, and Randy Kohl.

Connolly, Miller-Lerman, Cassel, and Stacy, JJ., and Bishop, Judge.

Cassel, J.

## I. INTRODUCTION

After being shot by Nikko Jenkins shortly after his release from prison, Shamecka Holloway sued the State of Nebraska and others. She claimed that the State and one of its contractors were negligent in failing to provide Jenkins with adequate mental health treatment and failing to seek mental health commitment prior to his release. The district court granted the defendants' motions to dismiss without allowing Holloway to proceed with discovery. Because whether to seek commitment is discretionary, the State and its employees were entitled to immunity from suit. And because Holloway failed to plead sufficient facts to show that the contractor was liable, the court did not err in dismissing the complaint. We affirm.

## II. BACKGROUND

Jenkins was sentenced to serve 21 years of incarceration with the Nebraska Department of Correctional Services (Department). During Jenkins' incarceration, he engaged in numerous violent activities and other conduct which violated the Department's rules, policies, and procedures. He repeatedly exhibited signs of a serious mental health problem and repeatedly requested treatment for such problem.

On July 30, 2013, after Jenkins had served 10½ years of his sentence, the State released him from incarceration. On August 24, Jenkins shot Holloway as she walked in her front yard in Omaha, Nebraska. As a result, Holloway suffered permanent damage and incurred medical bills.

Holloway sued the State; the Department; Robert Houston, retired director of the Department; Cameron White, behavioral health administrator for the Department; Correct Care Solutions (CCS); Dr. Natalie Baker; and Dr. Randy Kohl (collectively the appellees). She sued Houston, White, Baker, and Kohl in their official and individual capacities.

According to the complaint, the State had a number of responsibilities with respect to inmates. The responsibilities included operating certain correctional facilities in Nebraska, assessing and evaluating inmates in order to determine the need for mental health commitment or other appropriate mental health services, and providing adequate advance notice to members of the public regarding the release of a dangerous individual who threatened serious bodily harm to others.

CCS contracted with the State to provide medical services for inmates incarcerated in the facility in Tecumseh, Nebraska. CCS employees and agents evaluated and treated Jenkins while he was held at the Tecumseh correctional facility. Baker, a physician who worked at the Tecumseh facility under the direction of the Department and CCS, was largely responsible for the mental health care and treatment given to Jenkins. Holloway alleged that Baker personally interviewed and evaluated Jenkins during Jenkins' incarceration, that

Baker failed to take any steps to have Jenkins evaluated at the Lincoln Regional Center, and that Baker allowed Jenkins to be released from prison. According to the complaint, Jenkins told Baker and staff evaluators that he would hurt others upon his release.

Holloway claimed that at all times alleged in her complaint, Houston, White, Baker, and Kohl "were acting within the scope and course of their employment with their various employers." She further alleged that those individuals "evidenced a deliberate indifference to the mental health needs" of Jenkins "when they were aware of facts which created the likelihood that Jenkins, when released, presented a substantial risk of serious bodily harm to the citizens of Nebraska, and specifically to [Holloway]." Holloway claimed that the individual defendants violated the Department's policies or customs related to the treatment, evaluation, and incarceration of inmates exhibiting symptoms of a mental illness.

According to the complaint, Houston directed White to take certain actions. At Houston's direction, White was to reduce the duration of an inpatient treatment program by 4 months and change the clinical recommendations of hundreds of inmates from inpatient to outpatient treatment. As a result, the recommendation for Jenkins was changed from inpatient treatment to outpatient treatment, which accelerated his release from the Department. Holloway also alleged that the State failed to properly calculate and/or apply "good time" for Jenkins in ordering his release on July 30, 2013.

Holloway claimed that she suffered permanent mental and emotional damages as a proximate result of the appellees' acts of omission and commission. She alleged that the State had a duty to her and to the public in Omaha, insofar as the State was aware that Jenkins posed a risk to all citizens of Omaha. She claimed that the State knew or should have known of the foreseeability of harm to her once Jenkins was released. According to Holloway, Baker and CCS owed a duty to the citizens of Nebraska to correctly evaluate and treat all inmates

under their care and that they breached their duty in their treatment and release of Jenkins.

On September 2, 2014, the appellees filed motions to dismiss. One motion was brought on behalf of the State, Houston (official and individual capacities), White (official and individual capacities), Baker (official capacity), and Kohl (official and individual capacities). That motion asserted that the court lacked subject matter jurisdiction over the case and that the complaint failed to state a claim upon which relief could be granted. The other motion to dismiss, brought by CCS, moved to dismiss the complaint with prejudice for failure to state a claim upon which relief could be granted. Holloway later moved to dismiss Baker, alleging that Jenkins' release was not the result of negligence or lack of skill by Baker. The court dismissed the complaint as to Baker.

On September 4 and 5, 2014, the appellees moved for a protective order staying discovery pending resolution of the motions to dismiss. According to the motions, the day after the appellees filed their motions to dismiss, Holloway served 20 interrogatories, 220 requests for admission, and 25 requests for production upon the appellees.

On March 11, 2015, the district court entered an order granting the remaining appellees' motions to dismiss. The court found Holloway's motion to compel discovery to be moot, because it granted the motions to dismiss with prejudice.

The district court first considered the claims against the State and the remaining individual defendants. The court stated that the allegations of the complaint against Houston, White, and Kohl related only to the acts of those individuals within the scope and course of their employment. Thus, it dismissed the claims against them in their individual capacities. The court next considered the applicability of the discretionary function exception to the waiver of sovereign immunity contained in the State Tort Claims Act (Act).[1] The court reasoned

---

[1] See Neb. Rev. Stat. §§ 81-8,209 to 81-8,235 (Reissue 2014).

that the State had discretion in applying Jenkins' "good time" credits and in choosing not to civilly commit him, focusing on the "may" language used in the good time and civil commitment statutes.[2] Because the court concluded that the discretionary function exception applied, it dismissed the claims against the State, the Department, Houston, White, and Kohl.

The district court also dismissed the claim against CCS. The court found that Holloway failed to state a negligence claim. The court observed that the only allegations in the complaint pertaining to Jenkins' being improperly released were directed at Baker's negligence in failing to properly treat and evaluate Jenkins and that Holloway admitted Baker properly discharged her duties with respect to Jenkins. The court noted that Holloway did not allege a special relationship existed between CCS and Jenkins and that CCS never exerted control over Jenkins.

Holloway filed a timely appeal, and we granted the remaining appellees' petition to bypass the Nebraska Court of Appeals.

## III. ASSIGNMENTS OF ERROR

Holloway assigns that the district court erred in (1) granting the remaining appellees' motions to dismiss, (2) failing to allow her case to proceed with discovery, (3) finding that the discretionary function exception was applicable, (4) determining that the individual employees exercised due care in the performance of their duties, and (5) concluding that the dismissal of the direct action against Baker precluded an action based upon respondeat superior against CCS.

## IV. STANDARD OF REVIEW

[1-4] A district court's grant of a motion to dismiss is reviewed de novo.[3] An appellate court reviews de novo whether

---

[2] See Neb. Rev. Stat. §§ 83-1,107(3) (Cum. Supp. 2012) and 71-921(1) (Reissue 2009).

[3] *Litherland v. Jurgens*, 291 Neb. 775, 869 N.W.2d 92 (2015).

a party is entitled to dismissal of a claim based on federal or state immunity, drawing all reasonable inferences for the non-moving party.[4] Statutory interpretation presents a question of law.[5] In cases where the facts are undisputed, the application of the discretionary function exemption of the Act presents a question of law.[6]

[5] Decisions regarding discovery are directed to the discretion of the trial court, and will be upheld in the absence of an abuse of discretion.[7]

## V. ANALYSIS

### 1. Discretionary Function Exception

Although Holloway's complaint alleged that the State was negligent in two respects, she limits her argument concerning the applicability of the Act's discretionary function exception to a decision to seek a mental health commitment. Holloway's complaint alleged that the State was negligent in failing to properly calculate and apply "good time" for Jenkins and in failing to seek a mental health commitment. But she makes no argument in her brief concerning the "good time" claim. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the party's brief.[8] We therefore do not consider Holloway's "good time" claim.

### (a) Overview

[6] The Act contains a discretionary function exception to the waiver of sovereign immunity for certain claims. According to the exception, the Act shall not apply to

---

[4] *Anthony K. v. Nebraska Dept. of Health & Human Servs.*, 289 Neb. 540, 855 N.W.2d 788 (2014).

[5] *Twin Towers Condo. Assn. v. Bel Fury Invest. Group*, 290 Neb. 329, 860 N.W.2d 147 (2015).

[6] *D.K. Buskirk & Sons v. State*, 252 Neb. 84, 560 N.W.2d 462 (1997).

[7] *Breci v. St. Paul Mercury Ins. Co.*, 288 Neb. 626, 849 N.W.2d 523 (2014).

[8] *Stekr v. Beecham*, 291 Neb. 883, 869 N.W.2d 347 (2015).

> [a]ny claim based upon an act or omission of an employee of the state, exercising due care, in the execution of a statute, rule, or regulation, whether or not such statute, rule, or regulation is valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a state agency or an employee of the state, whether or not the discretion is abused.[9]

Thus, a state actor's performance or nonperformance of a discretionary function cannot be the basis of liability under the Act.[10]

[7] A court engages in a two-step analysis to determine whether the discretionary function exception of the Act applies.[11] First, the court must consider whether the action is a matter of choice for the acting employee. If the court concludes that the challenged conduct involves an element of judgment, it must then determine whether that judgment is of the kind that the discretionary function exception was designed to shield.[12]

### (b) Application

The parties rely on different statutes of the Nebraska Mental Health Commitment Act (MHCA)[13] in support of their arguments concerning whether the decision to seek a mental health commitment of another is a matter of choice for the employee. We examine both statutes.

[8] Holloway directs us to a statute that uses mandatory language and argues that the discretionary function

---

[9] § 81-8,219(1).

[10] See *Jasa v. Douglas County*, 244 Neb. 944, 510 N.W.2d 281 (1994).

[11] See *Shipley v. Department of Roads*, 283 Neb. 832, 813 N.W.2d 455 (2012).

[12] *Id.*

[13] See Neb. Rev. Stat. §§ 71-901 to 71-963 (Reissue 2009 & Cum. Supp. 2014).

exception is therefore inapplicable. Section 71-920(1) of the MHCA states:

> A mental health professional who, upon evaluation of a person admitted for emergency protective custody under section 71-919, determines that such person is mentally ill and dangerous shall execute a written certificate as provided in subsection (2) of this section not later than twenty-four hours after the completion of such evaluation. A copy of such certificate shall be immediately forwarded to the county attorney.

Holloway contends that the statute's use of the word "shall" means there was no discretion regarding civil commitment. Generally, the word "shall" in a statute is mandatory.[14]

But § 71-920 is inapplicable, because Jenkins was not "admitted for emergency protective custody." According to the plain language of § 71-920(1), it applies only to a mental health evaluation of a person already "admitted for emergency protective custody." Holloway did not plead that Jenkins was ever in emergency protective custody.

A statute explaining the ways a person believed to be mentally ill and dangerous may be admitted into emergency protective custody does not help Holloway. She argues that under § 71-919(1) of the MHCA, "emergency protective custody" includes a continuation of custody if the person is already in custody, and she pled that Jenkins was in custody. The pertinent part of the statute states that "[a] law enforcement officer . . . may take such person into emergency protective custody, cause him or her to be taken into emergency protective custody, or continue his or her custody if he or she is already in custody."[15] But the following subsection of the statute demonstrates that Jenkins was not taken into emergency protective custody. It provides in part that "[a] person taken

---

[14] *Fisher v. Heirs & Devisees of T.D. Lovercheck*, 291 Neb. 9, 864 N.W.2d 212 (2015).

[15] § 71-919(1).

into emergency protective custody under this section shall be admitted to an appropriate and available medical facility . . . ."[16] But we cannot infer from Holloway's complaint that Jenkins was admitted to any medical facility. Although Jenkins was in custody, there is no indication in Holloway's complaint that Jenkins was, while in custody, "admitted for emergency protective custody." Thus, § 71-920 does not apply.

[9] The statute upon which the State relies uses discretionary language. Section 71-921(1) provides:

Any person who believes that another person is mentally ill and dangerous may communicate such belief to the county attorney. The filing of a certificate by a law enforcement officer under section 71-919 shall be sufficient to communicate such belief. If the county attorney concurs that such person is mentally ill and dangerous and that neither voluntary hospitalization nor other treatment alternatives less restrictive of the subject's liberty than inpatient or outpatient treatment ordered by a mental health board is available or would suffice to prevent the harm described in section 71-908, he or she shall file a petition as provided in this section.

The first sentence of the statute uses the word "may." The word "may" when used in a statute will be given its ordinary, permissive, and discretionary meaning unless it would manifestly defeat the statutory objective.[17] Under the statute, whether to communicate a belief that another person is believed to be mentally ill and dangerous is a matter of choice. This satisfies the first step toward a determination that the discretionary function exception applies. We now turn to the second step of the analysis.

[10-13] The second step of the analysis requires that when a statute involves an element of judgment, the judgment must be of the kind that the discretionary function exception was

---

[16] § 71-919(2)(a).

[17] *Christiansen v. County of Douglas*, 288 Neb. 564, 849 N.W.2d 493 (2014).

designed to shield. The purpose of the discretionary function exception is to prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.[18] The discretionary function exception extends only to basic policy decisions made in governmental activity, and not to ministerial activities implementing such policy decisions.[19] The exception does not extend to the exercise of discretionary acts at an operational level, where there is no room for policy judgment.[20] It is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case.[21]

The decision whether to report to the county attorney that another person is thought to be mentally ill and dangerous is a policy decision that the Legislature intended to shield from liability. The State's public policy with regard to mentally ill and dangerous persons is that they be encouraged to obtain voluntary treatment.[22] But a report to the county attorney may result in the initiation of mental health board proceedings.[23] And after mental health board proceedings have occurred, a mentally ill and dangerous person could be subject to involuntary custody and treatment.[24] Emergency protective custody is to be used under limited conditions.[25]

To demonstrate the Legislature's differential treatment of policy decisions, we contrast the policy of the MHCA with the policy contained in the Child Protection and Family Safety

---

[18] See *Shipley v. Department of Roads, supra* note 11.

[19] See *id.*

[20] See, *id.*; *D.K. Buskirk & Sons v. State, supra* note 6.

[21] *Doe v. Omaha Pub. Sch. Dist.*, 273 Neb. 79, 727 N.W.2d 447 (2007).

[22] See § 71-902.

[23] See § 71-921.

[24] See § 71-902.

[25] See *id.*

Act.[26] As mentioned, under the MHCA, reporting to the county attorney that another person is thought to be mentally ill and dangerous is discretionary. But under the Child Protection and Family Safety Act, the Legislature made mandatory the reporting of child abuse or neglect by certain individuals.[27] The Legislature declared that it was the public policy of the State to protect children who may be subject to abuse or neglect and to require the reporting of child abuse or neglect in certain settings.[28] The different treatment of reporting under the two acts is based on policy decisions.

Holloway relies upon *Lemke v. Metropolitan Utilities Dist.*[29] in support of her argument that the discretionary function exception does not protect a failure to warn of a danger that is known to the government but unknown to the public. In *Lemke*, a political subdivision which supplied natural gas knew that certain connectors it had used could leak but did not inform its customers of the problem. A customer of the political subdivision sustained damages when a deteriorated connector resulted in an explosion. We considered whether the claim that the political subdivision failed to warn its customer fell within the discretionary function exception and determined that

> when (1) a governmental entity has actual or constructive notice of a dangerous condition or hazard caused by or under the control of the governmental entity and (2) the dangerous condition or hazard is not readily apparent to persons who are likely to be injured by the dangerous condition or hazard, the governmental entity has a nondiscretionary duty to warn of the danger or take

---

[26] See Neb. Rev. Stat. §§ 28-710 to 28-727 (Reissue 2008, Cum. Supp. 2014 & Supp. 2015).

[27] See § 28-711(1).

[28] See § 28-710.01.

[29] *Lemke v. Metropolitan Utilities Dist.*, 243 Neb. 633, 502 N.W.2d 80 (1993).

other protective measures that may prevent injury as the result of the dangerous condition or hazard. In such a situation, a governmental entity's failure to warn or take other protective measures is not a planning-level decision involving a social, economic, or political policy judgment and, therefore, does not come within the discretionary function exemption of the Political Subdivisions Tort Claims Act.[30]

Importantly, we distinguished *Lemke* in *Jasa v. Douglas County*.[31] *Jasa* involved a negligence action against a county health department after a child was infected with bacterial meningitis at a daycare facility. The child, by and through his parents, claimed that the county health department was negligent in failing to determine that there had been a case of bacterial meningitis at the daycare facility and in failing to inform the child's parents of the presence of the disease. We observed that in *Lemke*, the political subdivision brought the "injury-causing agent" to its customers, but that the county health department did not bring the "injury-causing agent" to the daycare facility.[32] Thus, we stated that "while the subdivision in *Lemke* had dominion, and in that sense control, over the injury-causing agent, the county [health] department did not."[33]

Holloway's situation is more like *Jasa* than *Lemke*, because the State did not have control over Jenkins. Holloway contends that the State "had information about Jenkins's mental illness and dangerousness that it did not disseminate to the public" and that the State "is responsible for bringing the injury-causing agent (Jenkins) to the public when it released him into the Omaha community knowing the risk he posed

---

[30] *Id.* at 647, 502 N.W.2d at 89.

[31] *Jasa v. Douglas County, supra* note 10.

[32] *Id.* at 962, 510 N.W.2d at 291.

[33] *Id.*

to the people of the community."[34] However, like in *Jasa*, the State did not have dominion or control over Jenkins after he was released. And because Jenkins had served his sentence, the State's options were limited to mandatorily discharging him or civilly committing him. As we determined above, the decision whether to commit Jenkins was a matter of judgment and, as such, was a discretionary function.

We conclude that the district court correctly determined that the discretionary function exception was applicable. Because an exception to the waiver of sovereign immunity applied, the court properly dismissed Holloway's claims against the State, the Department, Houston, White, and Kohl.

## 2. Claim Against CCS

The district court concluded that Holloway failed to state a negligence claim against CCS. The court noted that the claims in the complaint were directed toward Baker's negligence in failing to properly treat and evaluate Jenkins, but that Holloway had voluntarily dismissed Baker because Baker adequately discharged her duties. The court reasoned that the complaint failed to state a claim under general negligence principles and failed to plead facts that would allow liability against a mental health provider under Nebraska law.

[14-16] A complaint must meet certain requirements to withstand a motion to dismiss. To prevail against a motion to dismiss for failure to state a claim, a plaintiff must allege sufficient facts, accepted as true, to state a claim to relief that is plausible on its face.[35] In cases in which a plaintiff does not or cannot allege specific facts showing a necessary element, the factual allegations, taken as true, are nonetheless plausible if they suggest the existence of the element and raise a reasonable expectation that discovery will reveal evidence of the

---

[34] Brief for appellant at 15.

[35] *Doe v. Board of Regents*, 280 Neb. 492, 788 N.W.2d 264 (2010).

element or claim.[36] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[37]

[17,18] The principles concerning review of a motion to dismiss are well known. When reviewing an order dismissing a complaint, an appellate court accepts as true all facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the plaintiff's conclusion.[38] For purposes of a motion to dismiss, a court is not obliged to accept as true a legal conclusion couched as a factual allegation, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.[39]

[19,20] Holloway's negligent treatment claim against CCS fails due to the dismissal of her claims against Baker. Holloway alleged that Baker and CCS owed a duty to the citizens of Nebraska to correctly evaluate and treat all inmates under their care and that they breached their duty in their treatment and release of Jenkins. Her negligent treatment claim was premised upon treatment provided by Baker, who worked for CCS. Under the doctrine of respondeat superior, an employer is held vicariously liable for the negligent acts of an employee committed while the employee was acting within the scope of the employer's business.[40] But Holloway subsequently moved to voluntarily dismiss Baker, because the "actions by others in the Department . . . were not a result of negligence or the lack of skill by . . . Baker." If an employee

---

[36] *Id.*

[37] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

[38] *Litherland v. Jurgens, supra* note 3.

[39] *Estate of Teague v. Crossroads Co-op Assn.*, 286 Neb. 1, 834 N.W.2d 236 (2013).

[40] *Kocsis v. Harrison*, 249 Neb. 274, 543 N.W.2d 164 (1996).

is not liable, the employer cannot be liable under the doctrine of respondeat superior.[41] Because Holloway no longer contended that Baker was negligent, CCS could not be liable for any acts or omissions on Baker's part under a theory of respondeat superior.

Nor has Holloway stated a claim against CCS for negligently releasing Jenkins. Holloway specifically alleged in her complaint that the Department "is the State entity that was responsible for the incarceration, treatment and release of . . . Jenkins." There is no allegation that CCS was responsible for releasing Jenkins, nor can the same be reasonably inferred from the facts pled.

[21] Mental health treatment providers are only liable for failing to warn of a patient's threatened behavior under certain exceptional circumstances. The Mental Health Practice Act[42] and the Psychology Practice Act[43] contain limits on liability. A mental health practitioner or psychologist is not liable for failing to warn of a patient's threatened violent behavior unless the patient has communicated to the practitioner a serious threat of physical violence to a reasonably identifiable victim.[44] Specifically, the pertinent statute in the Mental Health Practice Act states:

> There shall be no monetary liability on the part of, and no cause of action shall arise against, any person who is licensed or certified pursuant to the Mental Health Practice Act for failing to warn of and protect from a patient's threatened violent behavior or failing to predict and warn of and protect from a patient's violent behavior except when the patient has communicated to the mental health practitioner a serious threat of physical violence

---

[41] *Id.*

[42] See Neb. Rev. Stat. §§ 38-2101 to 38-2139 (Reissue 2008 & Cum. Supp. 2014).

[43] See Neb. Rev. Stat. §§ 38-3101 to 38-3132 (Reissue 2008).

[44] See §§ 38-2137(1) and 38-3132(1).

against himself, herself, or a reasonably identifiable victim or victims.[45]
A statute in the Psychology Practice Act is substantially similar.[46] And we have concluded that a similar limitation on liability applies to psychiatrists.[47]

Liability cannot be established against CCS as a mental health treatment provider because Holloway was not a reasonably identifiable victim. Holloway alleged that Jenkins "presented a substantial risk of serious bodily harm to the citizens of Nebraska, and specifically to [her]." But she also alleged that "the risk of bodily harm to . . . Holloway and to other members of the public in Omaha . . . was great once . . . Jenkins informed . . . agents of the [State] that he intended to cause bodily harm and injury to persons at random." Holloway alleged that CCS owed a duty to her and to the public in Omaha insofar as it was aware that Jenkins posed a risk to all citizens of Omaha. Holloway, a resident of Omaha, alleged that all citizens of Omaha were potential victims. But all citizens of Omaha—a city of the metropolitan class[48] with 300,000 or more inhabitants[49]—cannot constitute "a reasonably identifiable victim or victims." And Holloway did not allege that Jenkins ever communicated a serious threat of physical violence against her. Thus, CCS cannot be liable as a mental health care provider under Nebraska law.

[22,23] Further, CCS could not be liable unless it owed Holloway a legal duty. The question whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular situation.[50] "[T]here is no duty to control

---

[45] § 38-2137(1).

[46] See § 38-3132(1).

[47] See *Munstermann v. Alegent Health*, 271 Neb. 834, 716 N.W.2d 73 (2006).

[48] See *City of Elkhorn v. City of Omaha*, 272 Neb. 867, 725 N.W.2d 792 (2007).

[49] See Neb. Rev. Stat. § 14-101 (Reissue 2012).

[50] *Ginapp v. City of Bellevue*, 282 Neb. 1027, 809 N.W.2d 487 (2012).

the conduct of a third person as to prevent him from caus-
ing physical harm to another unless 'a special relation exists
between the actor and the third person which imposes a duty
upon the actor to control the third person's conduct.'"[51] An
actor in a special relationship with another owes a duty of rea-
sonable care to third persons with regard to risks posed by the
other that arise within the scope of the relationship.[52]

The relationship necessary for liability is a custodial rela-
tionship. In *Bartunek v. State*,[53] we looked to the Restatement
(Second) of Torts, which provided that "'[o]ne who takes
charge of a third person whom he knows or should know to be
likely to cause bodily harm to others if not controlled is under
a duty to exercise reasonable care to control the third person
to prevent him from doing such harm.'" We stated that the
"takes charge" language referred to a custodial relationship. In
the context of the relationship between a probation officer and
a probationer, we stated that "[a]bsent the legal responsibility
of custodial or round-the-clock visual supervision, there is no
logical basis for imposing an ongoing duty on a probation offi-
cer to prevent illegal conduct by a probationer."[54]

CCS did not owe Holloway a legal duty, because it did
not have a special relationship with Jenkins. Any relation-
ship that CCS had with Jenkins was more attenuated than
the relationship between a probation officer and probationer.
As alleged by Holloway, CCS provided medical services
for inmates by virtue of a contract with the State, and its
employees evaluated and treated Jenkins. Holloway did not
allege that Jenkins was ever in CCS' custody. Nor did she
allege that Jenkins was being supervised by CCS at the time

---

[51] *Id.* at 1033, 809 N.W.2d at 492 (quoting Restatement (Second) of Torts
§ 315(a) (1965)).

[52] *Ginapp v. City of Bellevue, supra* note 50.

[53] *Bartunek v. State*, 266 Neb. 454, 462, 666 N.W.2d 435, 441 (2003)
(quoting Restatement (Second) of Torts § 319 (1965)).

[54] *Id.* at 463, 666 N.W.2d at 442.

he injured Holloway. Holloway's complaint does not plead facts showing a special relationship that would allow CCS to be held liable.

Because Holloway failed to plead facts to allow an inference that CCS was liable for the harm to Holloway, the district court did not err in dismissing the complaint as to CCS for failure to state a claim.

### 3. DISCOVERY

Holloway's claim that she should have been allowed to pursue discovery is without merit. Because the district court did not err in dismissing Holloway's complaint, it did not abuse its discretion in finding Holloway's motion to compel discovery to be moot.

### VI. CONCLUSION

We conclude that the decision whether to report to the county attorney that another person is thought to be mentally ill and dangerous falls under the discretionary function exception; thus, an exception to the State's waiver of sovereign immunity applied. We further conclude that Holloway failed to plead facts to state a claim against CCS. Accordingly, the district court did not err in dismissing Holloway's complaint, nor did it abuse its discretion in finding her motion to compel discovery to be moot. We affirm.

AFFIRMED.

HEAVICAN, C.J., and WRIGHT, J., not participating.