Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/16/2019 09:07 AM CDT

- 398 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE ESTATE OF CHAMBERS
Cite as 27 Neb. App. 398

In re Estate of Deena Chambers, deceased.
Kent A. Chambers, Personal Representative of the
Estate of Deena Chambers, deceased, appellant,
v. State of Nebraska, appellee.

___ N.W.2d ___

Filed July 16, 2019.    No. A-18-876.

1. **Decedents' Estates: Taxation: Appeal and Error.** On appeal of an inheritance tax determination, an appellate court reviews the case for error appearing on the record.

2. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

3. **Decedents' Estates: Parent and Child: Taxation: Appeal and Error.** Factual findings necessary in determining whether the requisite acknowledged parent-child relationship of Neb. Rev. Stat. § 77-2004 (Reissue 2018) exists should be reviewed for sufficient evidence and should not be disturbed on appeal unless clearly wrong.

4. **Statutes: Words and Phrases.** As a general rule, the word "shall" in a statute is considered mandatory and is inconsistent with the idea of discretion.

5. ____: ____. The word "may" when used in a statute will be given its ordinary, permissive, and discretionary meaning unless it would manifestly defeat the statutory objective.

6. **Decedents' Estates: Taxation: Statutes: Proof.** Statutes exempting property from inheritance tax should be strictly construed, and the burden is on the taxpayer to show that he or she clearly falls within the language of the statute.

7. **Decedents' Estates: Parent and Child: Taxation.** The following factors serve as appropriate guideposts to the trial court in making a determination of an acknowledged relationship of a parent under Neb. Rev.

- 399 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE ESTATE OF CHAMBERS
Cite as 27 Neb. App. 398

Stat. § 77-2004 (Reissue 2018): (1) reception of the child into the home and treatment of the child as a member of the family, (2) assumption of the responsibility for support beyond occasional gifts and financial aid, (3) exercise of parental authority and discipline, (4) relationship by blood or marriage, (5) advice and guidance to the child, (6) sharing of time and affection, and (7) existence of written documentation evincing the decedent's intent to act as parent.

8. **Judicial Notice: Records.** Papers requested to be judicially noticed must be marked, identified, and made a part of the record.

9. **Pleadings: Proof.** Pleadings alone are not proof but mere allegations of what the parties expect the evidence to show.

Appeal from the County Court for Furnas County: Anne M. Paine, Judge. Affirmed.

Jon S. Schroeder and Whitney S. Lindstedt, of Schroeder & Schroeder, P.C., for appellant.

No appearance for appellee.

Moore, Chief Judge, and Pirtle and Bishop, Judges.

Per Curiam.

## INTRODUCTION

Kent A. Chambers, personal representative of the estate of Deena Chambers, deceased, appeals from the determination by the county court for Furnas County that Anthony K. Chambers, as an individual beneficiary, did not qualify for preferential inheritance tax treatment under Neb. Rev. Stat. § 77-2004 (Reissue 2018). The court found that Kent failed to prove the decedent stood in the acknowledged relation of a parent to Anthony. Because the county court's factual determination was not clearly wrong, we affirm.

## BACKGROUND

Deena died testate in January 2018. Deena was a resident of Furnas County, Nebraska, and she was survived by Kent, her husband. Kent and Deena were married for a little over

- 400 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE ESTATE OF CHAMBERS
Cite as 27 Neb. App. 398

30 years and have no biological children. One of the devisees in Deena's will was Kent's nephew, Anthony, who was born in 1975 to Kent's brother and the brother's then-wife. A copy of Deena's signed, January 2009 will was filed in the county court in February 2018. In the 2009 will, Anthony is named as alternate personal representative and alternate trustee for all trusts established by the will and is the residuary beneficiary of the will.

In March 2018, Kent, as personal representative, filed an inventory for Deena's estate in the county court. On June 12, he filed a petition for determination of inheritance tax, along with an inheritance tax worksheet, voluntary appearance, and waiver of notice. Kent asked the court to "dispense with giving of any further notice as provided by law; and upon hearing, without delay," determine the value of Deena's assets and the amount of inheritance tax. On the inheritance tax computation portion of the worksheet, Anthony's designated "Beneficiary Relationship" was "Like a Child." The Furnas County Attorney signed the worksheet on May 25, under the printed paragraph stating:

> I, the undersigned . . . County Attorney, hereby enter my voluntary appearance . . . in the above captioned proceeding and waive the service of notice upon me to show just cause, and furthermore waive all notice required by law of time and place of hearing for the determination of values of property for inheritance tax purposes and for the purpose of assessing inheritance tax . . . . I have examined the foregoing Worksheet and have no objections thereto for inheritance tax purposes only.

On June 22, 2018, Kent filed with the county court an affidavit from Anthony, detailing Deena and Anthony's relationship. Attached to the affidavit as an exhibit was a copy of an unsigned draft of a February 2013 last will and testament of Deena, naming Anthony as one of the beneficiaries. Anthony is identified at three points in the draft will as having "been like a child of [Deena's] for his entire life."

- 401 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE ESTATE OF CHAMBERS
Cite as 27 Neb. App. 398

A hearing was held before the county court on July 23, 2018. At the hearing, Kent's attorney stated that he had presented an inheritance tax worksheet to the county attorney, who had the opportunity to review Anthony's affidavit about his relationship with Deena and to ask any questions of Kent. According to Kent's attorney, the county attorney "said he was satisfied and signed off on it." During the hearing, Kent's attorney asked the court to take judicial notice of Anthony's affidavit, "the will that is in the file," the inventory, and the inheritance tax worksheet. The court did so, but these papers were not marked and made part of the record. The only exhibits offered by Kent and received by the court were copies of durable power of attorney documents for business and for healthcare, in which Deena named Anthony as her "alternate business attorney in fact" and "alternate . . . health care power of attorney." The court also heard testimony from both Kent and Anthony about the relationship between Deena and Anthony.

Anthony's parents divorced at some point in the mid-1980's, and Anthony's father eventually drifted away from the family. Anthony and his sister lived with his mother after the divorce. Anthony was a frequent visitor to Kent and Deena's home as a child and into adulthood. Anthony estimated that he spent the following number of days per year with Kent and then with Kent and Deena (after age 10): 3 days per year prior to age 10, "[r]oughly" 10 days per year between ages 10 and 15, "probably" 9 days per year between ages 15 and 20, and "maybe" 3 days during 2017 (after he was married and started having children).

Kent testified that he felt he had treated Anthony like a son during his life and that he loved him like a son. Anthony's middle name is Kent, and he assumes he was named after his uncle. The record shows that they would do chores together on Kent's father's family farm and that Kent taught Anthony about various farm-related duties. Kent provided

- 402 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE ESTATE OF CHAMBERS
Cite as 27 Neb. App. 398

Anthony spiritual guidance, and the two shared interests including movies, music, and the outdoors. Kent gave Anthony Kent's father's gun because of their shared love of hunting and pistols and because Anthony had a good relationship with Kent's father. Kent and Deena married when Anthony was in approximately the seventh grade, and Anthony was a groomsman in their wedding.

Kent indicated that their limited financial circumstances did not allow him and Deena to provide Anthony with any significant gifts beyond ordinary birthday gifts, but he testified that if they had had the money, they would have shared it with Anthony. Likewise, Anthony did not remember any gifts "beyond the normal gifts."

Kent was asked about whether he disciplined Anthony at any time. He recalled an incident that happened when they were moving irrigation pipe. According to Kent, Anthony was "kicking up the dust in the air," and Kent told him not to. It "wasn't a big deal" to Kent, but it was something that Anthony remembered. Kent indicated that while he exercised parental authority over Anthony at times while performing chores at the farm and mentored him, Anthony was "not a difficult child" and did not require much discipline. Anthony also testified about this incident, indicating that it was a time where he "let Kent down" and realized that his actions "could have been better." He described it as "an embarrassing moment" from which he "learned quickly."

Kent testified that he and Deena shared time and affection with Anthony and had many days of "family time" together, although he wished "there had been more times." He indicated that it seemed like the times they did have together were always good. Anthony spent time with Kent and Deena after their marriage, and he felt that whenever he was there, it "was just like before, it was a welcoming home." They would eat together, talk about things, and watch television "or whatever," and Anthony felt it was "always a fun time." Anthony testified

- 403 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE ESTATE OF CHAMBERS
Cite as 27 Neb. App. 398

that he learned a great deal about marriage, hard work, character, and faith from them. Anthony is now married and has two children, and they have had "many days of family time" with Kent and Deena in which Deena would cook for all of them, and Kent and Deena would engage in various activities with the children.

Kent testified about the unsigned 2013 draft will designating property to Anthony and including language that acknowledged Anthony was like a child to Deena. In 2013, Kent and Deena asked their attorney to prepare wills for them. Although the attorney prepared wills and sent them to Kent and Deena, they did not sign the drafts of those wills at that time. According to Kent, the wills were not signed in 2013 because "life is complicated sometimes" and they were "embroiled in a lawsuit" involving a tenant of Kent's mother's estate. He indicated further that after the litigation was over, he "lost [his] dog" and then Deena began having health issues, which shifted his focus to taking care of her at home. Kent testified that he currently has an up-to-date will that includes "the language . . . about how close" he is to Anthony.

On August 7, 2018, the county court entered an order finding that Kent had not met his burden of proof to show that the relationship between Deena and Anthony rose to the level required by § 77-2004. Accordingly, the court instructed him to submit an amended inheritance tax worksheet in conformity with the court's order. In reaching this determination, the court analyzed case law factors for determining whether a decedent stood in the acknowledged relation of a parent with a devisee in order to qualify for preferential inheritance tax treatment. The court found the following factors did not weigh in favor of a parent-child relationship between Deena and Anthony: the assumption of responsibility for support beyond occasional gifts and financial aid, and the existence of written documentation evincing decedent's intent to act as parent. The court also found the following factors did not weigh

- 404 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE ESTATE OF CHAMBERS
Cite as 27 Neb. App. 398

heavily in favor of a parent-child relationship: the reception of the child into the home and treatment as a member of the family, and the exercise of parental authority and discipline. Finally, the court found that the relationship by blood or marriage and the sharing of time and affection factors weighed in favor of a parent-child relationship, and the advice and guidance to the child factor weighed somewhat in favor of a parent-child relationship.

After analyzing the above factors and reviewing various other cases applying the factors, the county court concluded:

In most of the cases cited, the [d]ecedent exercised parental authority over the taxpayer—providing discipline and guidance over major life decisions such as schooling, career choice, dating, and medical treatment, as well as providing financial assistance including things like co-signing on loans, partnering in businesses, providing help with school or housing. Later in life[,] the taxpayers often returned and provided assistance to the [d]ecedent as they grew elderly, taking them to the doctor and visiting them regularly.

In the case at hand it is clear that [Anthony] was very close to Kent and Deena and benefitted greatly from his relationship with them as he was growing up. It is also clear that Kent and Deena shared great affection for [Anthony], having no children of their own, and enjoyed sharing their interests, passions and values with not only [Anthony] but also [his] family. Sadly, Deena passed away while she was young and still married so did not need assistance from [Anthony] for things like going to the doctor, etc.

However, the Court cannot distinguish these facts from the facts in In re Estate of Malloy, [15 Neb. App. 755, 736 N.W.2d 399 (2007)], wherein the Court found that it was not uncommon for families who farm and ranch together to form a close relationship and that their close

- 405 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
27 NEBRASKA APPELLATE REPORTS
IN RE ESTATE OF CHAMBERS
Cite as 27 Neb. App. 398

bond was not out of the ordinary for family members in a rural society. The Court in that case found that to be true, even where the facts were such that [the devisee] had stayed in the [decedent's] house for extended periods as a child, received financial assistance from [the decedent] and spent three-four days a week and all his holidays with [the decedent].

While in no way diminishing the positive relationship between Deena and [Anthony], the Court is required to strictly construe statutory language exempting property from inheritance tax. The Court cannot find under these facts that the burden of proof has been met to show that the relationship rises to the level required by §77-2004.

Kent subsequently perfected his appeal to this court.

## ASSIGNMENTS OF ERROR

Kent asserts that the county court erred in (1) requiring a hearing on an inheritance determination when the county attorney, on behalf of the county, approved the calculation, voluntarily appeared, and waived notice of the inheritance tax determination and (2) holding that the evidence did not establish that Anthony was a person to whom Deena, for more than 10 years prior to death, stood in the acknowledged relation of a parent.

## STANDARD OF REVIEW

[1,2] On appeal of an inheritance tax determination, an appellate court reviews the case for error appearing on the record. *In re Estate of Hasterlik*, 299 Neb. 630, 909 N.W.2d 641 (2018). When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.*

[3] Factual findings necessary in determining whether the requisite acknowledged parent-child relationship of § 77-2004 exists should be reviewed for sufficient evidence and should

- 406 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE ESTATE OF CHAMBERS
Cite as 27 Neb. App. 398

not be disturbed on appeal unless clearly wrong. *In re Estate of Hasterlik, supra*.

## ANALYSIS

*Decision to Hold Hearing.*

Kent asserts that the county court erred in requiring a hearing on an inheritance determination when the county attorney, on behalf of the county, approved the calculation, voluntarily appeared, and waived notice of the inheritance tax determination. Kent argues that by signing the voluntary appearance and waiver of notice on the inheritance tax worksheet, indicating that he had no objection to the worksheet, the county attorney bound the county to the facts detailed in the worksheet including that Anthony fit the designation of being "Like a Child" to Deena.

We note, as did the county court, two relevant statutory provisions. First, Neb. Rev. Stat. § 77-2018.03 (Reissue 2018) provides:

> In all matters involving the determination of inheritance tax, notice served upon the county attorney shall constitute notice to the county and the State of Nebraska. It shall be the duty of the county attorney to represent the county and the State of Nebraska in such matters as its attorney. In so representing the county and the State of Nebraska, the county attorney is authorized, in addition to such other powers as he normally may exercise as attorney for the county, to enter into and bind the county and the State of Nebraska by stipulation as to any facts which could be presented by evidence to either the inheritance tax appraiser or the county court, and to waive service of notices upon him to show cause or of the time and place of hearing, and to enter a voluntary appearance in such proceeding, in behalf of the county and the State of Nebraska.

This statute, while authorizing the county attorney to stipulate to facts regarding the determination of inheritance tax which

- 407 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE ESTATE OF CHAMBERS
Cite as 27 Neb. App. 398

could be presented by evidence to the county court, does not require the court to accept the stipulated facts.

Second, we note Neb. Rev. Stat. § 77-2018.02 (Reissue 2018), which concerns the procedure for determination of inheritance tax in the absence of probate of the estate. With regard to the requirement that the court hold a hearing on the petition for determination of inheritance tax, and, as relevant in this case, subsection (5) of § 77-2018.02 provides:

> If it appears to the county court that (a) the county attorney of each county in which the property described in the petition is located has executed a waiver of notice upon him or her to show cause, or of the time and place of hearing, and has entered a voluntary appearance in such proceeding in behalf of the county and the State of Nebraska, and (b) either (i) all persons against whom an inheritance tax may be assessed are either a petitioner or have executed a waiver of notice upon them to show cause, or of the time and place of hearing, and have entered a voluntary appearance, or (ii) a party to the proceeding has agreed to pay to the proper counties the full inheritance tax so determined, the court *may dispense with the notice provided for* in subsections (2) and (3) of this section and proceed without delay to make a determination of inheritance tax, if any, due on account of the property described in the petition.

(Emphasis supplied.)

In its August 7, 2018, order, after noting the above statutory provisions, the county court observed that while the parties may enter into stipulations concerning the evidence and waive appearances, the court, ultimately, is responsible for determining the inheritance tax. We agree.

The court also noted *In re Estate of Malloy*, 15 Neb. App. 755, 736 N.W.2d 399 (2007), where the court, on its own motion, scheduled a hearing to determine inheritance tax. In that case, after being devised a substantial portion of his uncle's estate, a nephew and another copersonal representative

- 408 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE ESTATE OF CHAMBERS
Cite as 27 Neb. App. 398

of the estate filed a petition for determination of inheritance tax, and the court assessed inheritance tax against various parties, including the nephew, whom the court taxed at the rate for an immediate relative of the decedent under § 77-2004. Subsequently, the value of the uncle's estate increased, and the nephew filed an amended petition for determination of inheritance tax, again alleging that he qualified for preferential treatment under § 77-2004. The court, on its own motion, scheduled a hearing to redetermine the inheritance tax. At the hearing, the court received exhibits including the first inheritance tax worksheet signed by the State, which allowed the nephew to be taxed as a "Class I heir" under § 77-2004. *In re Estate of Malloy*, 15 Neb. App. at 757, 736 N.W.2d at 401. The parties stipulated that prior to signing the first worksheet, the State was aware of how the nephew was being treated. The State admitted that the nephew had provided it with affidavits, also admitted into evidence at the hearing, attesting to the closeness of the relationship between the uncle and nephew. The State also admitted that it made a mistake in agreeing to the initial tax worksheet by signing it.

[4,5] Kent argues that *In re Estate of Malloy* is distinguishable because the county court in that case scheduled a hearing only after the county attorney apparently refused to sign the waiver form on the second inheritance tax worksheet. He argues that the county attorney had authority under § 77-2018.03 to bind the State and that because the county attorney did so in this case, § 77-2018.02 does not support the court requiring a hearing. Kent's argument ignores the language of § 77-2018.02(5), which provides that, under the circumstances described in that subsection, the court "*may dispense with the notice provided for* in subsections (2) and (3) . . . and proceed without delay to make a determination of inheritance tax." (Emphasis supplied.) As a general rule, the word "shall" in a statute is considered mandatory and is inconsistent with the idea of discretion. *State v. Irish*, 298 Neb. 61, 902 N.W.2d 669 (2017). The word "may" when used in a

- 409 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE ESTATE OF CHAMBERS
Cite as 27 Neb. App. 398

statute will be given its ordinary, permissive, and discretionary meaning unless it would manifestly defeat the statutory objective. *Holloway v. State*, 293 Neb. 12, 875 N.W.2d 435 (2016). Although the county attorney in this case signed the waiver of notice, the decision of whether to dispense with notice of a hearing was within the court's discretion. Further, § 77-2018.02(5) still requires the county court to make a determination of inheritance tax. It does not prevent the court from holding a hearing, nor does it require the court to simply accept the proffered inheritance tax worksheet.

The court did not err in holding a hearing to determine the inheritance tax due in this case. This assignment of error is without merit.

*Findings Under § 77-2004.*

Kent asserts that the county court erred in concluding that the evidence did not establish that Anthony was a person to whom Deena, for more than 10 years prior to death, stood in the acknowledged relation of a parent.

Again, we note, as did the county court, two pertinent statutes. First, we note § 77-2004, which provides:

> In the case of . . . any person to whom the deceased for not less than ten years prior to death stood in the acknowledged relation of a parent, or the spouse or surviving spouse of any such persons, the rate of tax shall be one percent of the clear market value of the property in excess of forty thousand dollars received by each person. Any interest in property, including any interest acquired in the manner set forth in section 77-2002, which may be valued at a sum less than forty thousand dollars shall not be subject to tax. In addition the homestead allowance, exempt property, and family maintenance allowance shall not be subject to tax. Interests passing to the surviving spouse by will, in the manner set forth in section 77-2002, or in any other manner shall not be subject to tax.

- 410 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE ESTATE OF CHAMBERS
Cite as 27 Neb. App. 398

We also note Neb. Rev. Stat. § 77-2005 (Reissue 2018), which provides:

> In the case of an uncle, aunt, niece, or nephew related to the deceased by blood or legal adoption, or other lineal descendant of the same, or the spouse or surviving spouse of any of such persons, the rate of tax shall be thirteen percent of the clear market value of the property received by each person in excess of fifteen thousand dollars. If the clear market value of the beneficial interest is fifteen thousand dollars or less, it shall not be subject to tax.

This is the provision that would apply to Deena and Anthony's relationship absent evidence that for not less than 10 years prior to her death, Deena stood in the acknowledged relation of a parent to Anthony.

[6] Statutes exempting property from inheritance tax should be strictly construed, and the burden is on the taxpayer to show that he or she clearly falls within the language of the statute. *In re Estate of Hasterlik*, 299 Neb. 630, 909 N.W.2d 641 (2018).

[7] The following factors serve as appropriate guideposts to the trial court in making a determination of an acknowledged relationship of a parent under § 77-2004: (1) reception of the child into the home and treatment of the child as a member of the family, (2) assumption of the responsibility for support beyond occasional gifts and financial aid, (3) exercise of parental authority and discipline, (4) relationship by blood or marriage, (5) advice and guidance to the child, (6) sharing of time and affection, and (7) existence of written documentation evincing the decedent's intent to act as parent. *In re Estate of Hasterlik, supra*.

[8,9] Initially, we note that the items judicially noticed by the county court (Anthony's affidavit, "the will that is in the file," the inventory, and the inheritance tax worksheet) were not marked and made part of the record. Papers requested to be judicially noticed must be marked, identified, and made a

- 411 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE ESTATE OF CHAMBERS
Cite as 27 Neb. App. 398

part of the record. *In re Estate of Radford*, 297 Neb. 748, 901 N.W.2d 261 (2017). Although these documents were filed in the transcript, they are not evidence in this case. Pleadings alone are not proof but mere allegations of what the parties expect the evidence to show. *Id.*

Turning our attention to the evidence adduced at the hearing with respect to the factors laid out above, we first address those factors which the county court found did not weigh in favor of a parent-child relationship between Deena and Anthony: the assumption of the responsibility for support beyond occasional gifts and financial aid, and the existence of written documentation evincing the decedent's intent to act as parent.

The evidence clearly showed that Kent worked with his father and did not have a lot of extra money. Accordingly, he and Deena did not provide financial support to Anthony beyond occasional birthday gifts. Kent argues that this factor should only count against the finding of a parent-child relationship "if the parent has money that could have been given to the child." Brief for appellant at 18. While the county court's finding that Kent and Deena did not provide financial support to Anthony was not clearly wrong, under the circumstances of this case, we conclude that this factor is, at best, neutral.

With respect to written documentation, the county court found no evidence of any written documentation that Kent or Deena ever called Anthony their son, no oral declarations that they considered him their child, and—other than "the obviously favorable treatment" in Deena's will—no writing "evincing [an] intent to act as parent." See *In re Estate of Hasterlik*, 299 Neb. at 634, 909 N.W.2d at 644. In arguing that there was such evidence, Anthony relies on the unsigned 2013 draft will with the "Like a Child" language, as well as the 2009 will which provided for Anthony as a beneficiary. Neither the 2013 unsigned draft nor Deena's signed 2009 will

- 412 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE ESTATE OF CHAMBERS
Cite as 27 Neb. App. 398

was admitted as an exhibit at trial, but they were included in the transcript. While there is an explanation in the record for why Kent and Deena never signed the draft wills prepared for them in 2013, the fact remains that Deena did not sign the 2013 draft and the "Like a Child" language is not included in her 2009 will. Even if these two documents had been admitted into evidence, we cannot say that it would amount to more than slight evidence of a parent-child relationship between Deena and Anthony.

The county court found that these factors did not weigh heavily in favor of a parent-child relationship: the reception of the child into the home and treatment of the child as a member of the family, and the exercise of parental authority and discipline. Although Anthony visited Kent and then Kent and Deena regularly throughout his life, he never actually lived with them, always residing with one or both of his parents as a child. Anthony felt comfortable and welcome in Kent and Deena's home, but he did not stay with them for extended periods. After marrying and having a family of his own, he estimated that he visited them approximately three times per year. Finally, the incident when Kent told Anthony to stop "kicking up the dust in the air" while they were moving irrigation pipe was the only evidence of an instance of Kent or Deena exercising parental authority or discipline over Anthony. The county court was not clearly wrong in finding that these factors did not weigh heavily in favor of a parent-child relationship between Deena and Anthony.

With respect to the remaining factors, Anthony is related to Kent by blood and to Deena by marriage. It is clear that Kent provided guidance to Anthony by teaching him about farming. He also provided spiritual guidance, and Anthony testified that he learned about marriage and relationships by spending time with Kent and Deena. Clearly, Kent and Deena had a close and caring relationship with Anthony. However, the county court concluded that the evidence was insufficient to establish

- 413 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
IN RE ESTATE OF CHAMBERS
Cite as 27 Neb. App. 398

Kent and Deena acted in a manner toward Anthony that went above and beyond the normal circumstances of the relationship between an aunt and uncle and their nephew.

We cannot say that the county court was clearly wrong in determining that Kent failed to carry his burden of proof.

## CONCLUSION

Because the county court's factual determination was not clearly wrong, we affirm the order of the county court.

Affirmed.