Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/03/2022 09:11 AM CDT

Donald Clark and Kimberly Clark,
appellees, v. Sargent Irrigation District,
a political subdivision, and Doug Kriss,
an employee of Sargent Irrigation
District, appellants.

___ N.W.2d ___

Filed March 11, 2022.    No. S-21-288.

1. **Political Subdivisions Tort Claims Act: Appeal and Error.** Whether a plaintiff's negligence claims are precluded by an exemption to the Political Subdivisions Tort Claims Act is a question of law for which an appellate court has a duty to reach its conclusions independent of the conclusions reached by the district court.

2. **Summary Judgment: Appeal and Error.** An appellate court reviews the district court's ruling on a motion for summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.

3. **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it, irrespective of whether the issue is raised by the parties.

4. **Summary Judgment: Final Orders: Legislature: Appeal and Error.** The general rule is that an order denying summary judgment is not a final, appealable order. But the Legislature carved out a limited exception to this general rule when it enacted Neb. Rev. Stat. § 25-1902(1)(d) (Cum. Supp. 2020) to create a new category of final orders for purposes of appeal.

5. **Statutes: Legislature: Intent.** To discern the meaning of a statute, courts must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense; it is the court's duty to discover, if possible, the Legislature's intent from the statutory text itself.

6. **Statutes: Legislature.** When the Legislature uses legal terms of art in statutes, such terms should be construed and understood according to their accepted legal meaning.

7. **Summary Judgment: Final Orders: Immunity.** The plain text of Neb. Rev. Stat. § 25-1902(1)(d) (Cum. Supp. 2020) sets out two requirements which must be satisfied for an order to be final: (1) The order must deny a motion for summary judgment, and (2) the summary judgment motion must be based on either the assertion of sovereign immunity or the immunity of a government official.

8. **Immunity: Words and Phrases.** "Sovereign immunity" is a legal term of art referring to the common-law doctrine of sovereign immunity. Under that doctrine, a state's immunity from suit is recognized as a fundamental aspect of sovereignty.

9. **Immunity: Jurisdiction.** The doctrine of sovereign immunity is, by its nature, jurisdictional.

10. **Immunity: Constitutional Law: States: Political Subdivisions: Legislature.** The sovereign immunity of the State and its political subdivisions is preserved in Neb. Const. art. V, § 22. This constitutional provision is not self-executing, and no suit may be maintained against the State or its political subdivisions unless the Legislature, by law, has so provided.

11. **Political Subdivisions Tort Claims Act: Tort Claims Act: Immunity: Waiver: Legislature.** Through enactment of the Political Subdivisions Tort Claims Act and the State Tort Claims Act, the Legislature has allowed a limited waiver of sovereign immunity with respect to some, but not all, types of tort claims.

12. **Political Subdivisions Tort Claims Act: Tort Claims Act: Immunity: Waiver: Jurisdiction: Dismissal and Nonsuit.** Both the State Tort Claims Act and the Political Subdivisions Tort Claims Act expressly exempt certain claims from the limited waiver of sovereign immunity. And because the statutory exemptions identify those tort claims for which the sovereign retains immunity from suit, when an exemption applies, the proper remedy is to dismiss the claim for lack of subject matter jurisdiction.

13. **Political Subdivisions Tort Claims Act: Tort Claims Act: Summary Judgment: Immunity: Final Orders.** When a motion for summary judgment asserts that the plaintiff's claim falls within one or more of the statutory exemptions under the State Tort Claims Act or the Political Subdivisions Tort Claims Act, the motion is based on the assertion of sovereign immunity within the meaning of Neb. Rev. Stat. § 25-1902(1)(d) (Cum. Supp. 2020).

14. **States: Political Subdivisions: Immunity.** The doctrine of sovereign immunity is not implicated by every affirmative defense which may be available to a State or political subdivision in response to a lawsuit.

15. **Political Subdivisions Tort Claims Act: Tort Claims Act: Immunity: Notice: Jurisdiction.** The presuit claim procedures under the Political Subdivisions Tort Claims Act and the State Tort Claims Act are not statutes in derogation of sovereign immunity, but, rather, they are administrative in nature, intended to give the government notice of a recent tort claim so that it can investigate and, if appropriate, resolve the claim before suit is commenced. The presuit claim presentment requirements are procedural conditions precedent to commencing a tort action against the government in district court; they are not jurisdictional.

16. **Political Subdivisions Tort Claims Act: Tort Claims Act: Immunity: Jurisdiction.** A plaintiff's failure to comply with the presuit claim procedures may be asserted as an affirmative defense to avoid liability in an action brought under the State Tort Claims Act or the Political Subdivisions Tort Claims Act, but the administrative requirements are not jurisdictional and do not bear directly on the question of sovereign immunity.

17. **Political Subdivisions Tort Claims Act: Tort Claims Act: Summary Judgment: Final Orders: Immunity.** When the State or a political subdivision moves for summary judgment asserting the failure to comply with the presuit claim procedures of the State Tort Claims Act or the Political Subdivisions Tort Claims Act, the motion is not based on the assertion of sovereign immunity for purposes of Neb. Rev. Stat. § 25-1902(1)(d) (Cum. Supp. 2020).

18. **Summary Judgment: Final Orders: Immunity.** To satisfy the final order requirement under Neb. Rev. Stat. § 25-1902(1)(d) (Cum. Supp. 2020) based on the assertion of sovereign immunity, the motion for summary judgment must do more than merely reference sovereign immunity; the nature and substance of the motion must actually present a claim of sovereign immunity.

19. **Final Orders: Jurisdiction: Appeal and Error.** While an appellate court can reverse, vacate, or modify a final order under Neb. Rev. Stat. § 25-1902(1)(d) (Cum. Supp. 2020), it cannot address issues that do not bear on the correctness of the final order upon which its appellate jurisdiction is based.

20. **Political Subdivisions Tort Claims Act: Liability.** Under the discretionary function exemption of the Political Subdivisions Tort Claims Act, the performance or nonperformance of a discretionary function cannot be the basis of tort liability.

21. **Political Subdivisions Tort Claims Act.** A court engages in a two-step analysis to determine whether the discretionary function exemption to the Political Subdivisions Tort Claims Act applies. First, the court must consider whether the action is a matter of choice for the acting employee. This inquiry is mandated by the language of the statutory exemption, because conduct cannot be discretionary unless it involves an element of judgment or choice. Second, if the court concludes that the challenged conduct involved an element of judgment, it must then determine whether that judgment is the kind the discretionary function exemption was designed to shield.

22. ____. The discretionary function exemption of the Political Subdivisions Tort Claims Act will not apply when a statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because in that event, the employee has no rightful option but to adhere to the directive. And if the employee's conduct cannot appropriately be the product of judgment or choice, then there is no discretion in the conduct for the discretionary function exemption to protect.

Appeal from the District Court for Custer County: Karin L. Noakes, Judge. Affirmed in part, and in part dismissed.

Jared J. Krejci, of Smith, Johnson, Allen, Connick & Hansen, for appellants.

Nicholas R. Norton and Nicholas J. Ridgeway, of Jacobsen, Orr, Lindstrom & Holbrook, P.C., L.L.O., for appellees.

Heavican, C.J., Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Stacy, J.

In this negligence action, landowners allege that a political subdivision's employee negligently mixed and overapplied an off-label herbicide mixture, causing damage to their corn crop. After the district court denied the political subdivision's motion for summary judgment, the political subdivision filed this interlocutory appeal pursuant to Neb. Rev. Stat. § 25-1902(1)(d) (Cum. Supp. 2020), assigning two primary errors. We conclude that § 25-1902(1)(d) confers appellate jurisdiction to review one of the assigned errors, but not the

other. We therefore dismiss that portion of the appeal over which we lack jurisdiction, and we otherwise affirm.

## BACKGROUND

The Sargent Irrigation District (SID) is a political sub-division in Custer County, Nebraska. On July 3, 2019, SID employee Doug Kriss prepared a mixture of herbicides and sprayed it on several trees along a canal. At the time, Kriss was licensed as a noncommercial applicator under Nebraska's Pesticide Act.[1]

Donald Clark and Kimberly Clark own property in Custer County near the canal where Kriss sprayed the herbicide mixture. In July 2019, the Clarks began to notice damage to their corn crop. They suspected the damage was caused by the herbicide mixture used by Kriss.

On June 29, 2020, the Clarks' attorney submitted a written claim to the SID pursuant to the Political Subdivisions Tort Claims Act (PSTCA).[2] The claim alleged that on July 3, 2019, Kriss prepared a herbicide mixture using "one quart of 2-4-D, one cup of crop oil, and 25 gallons of water." Kriss then added this mixture to a tank which had not been properly rinsed out from a prior use and contained "approximately three gallons" of Roundup herbicide. The claim described this as an "improper mixture of herbicides," and it alleged that Kriss then overapplied the mixture to the trees along the canal. When the Clarks noticed damage to their corn, they obtained opinions from two agronomists that the crop damage was caused by "the off-label application and overapplication of a herbicide" mixture by the SID, which drifted onto the Clarks' property causing damage to 9,673 bushels of corn. Attached to the claim was a written statement signed by Kriss and the SID's general manager. The statement admitted that the sprayer Kriss used to apply the herbicide mixture had not

[1] Neb. Rev. Stat. §§ 2-2622 to 2-2659 (Reissue 2012 & Cum. Supp. 2020).

[2] Neb. Rev. Stat. § 13-901 et seq. (Reissue 2012 & Cum. Supp. 2020).

been properly rinsed out before use and that as a result, the herbicide mixture applied to the trees contained 3 gallons of Roundup. The statement also acknowledged that Kriss may have overapplied the mixture.

On July 7, 2020, the SID's board of directors held a regular monthly meeting. The minutes from the SID board meeting state:

> [The SID's general manager] presented a letter from the [SID's attorney] with a legal recommendation at this time not to settle with [the] Clark[s] on the claim and not to overrule the opinion of the insurance adjuster. [It was] moved and seconded . . . to follow the [SID's] attorney's recommendation on the Clark claim. . . . The motion carried.

On September 1, 2020, the Clarks filed this negligence action against the SID and Kriss in the district court for Custer County. The complaint alleged that Kriss, acting in his capacity as an employee of the SID, was negligent in (1) using an off-label mixture of "2-4-D" and Roundup which was "not in accordance with the herbicides' label instructions," (2) overapplying the off-label mixture, and (3) failing to apply the mixture in a reasonable and prudent manner. It alleged the SID was vicariously liable for Kriss' negligence and was independently negligent for failing to properly train and supervise Kriss. The complaint alleged that before filing suit, the Clarks submitted a written claim to the SID on June 29, 2020, and that the SID made a final disposition denying the claim on July 7.

The SID and Kriss moved to dismiss the complaint, citing two grounds: (1) The Clarks "fail[ed] to comply with the requirements of the [PSTCA]," and (2) the Clarks' claims "fall within the discretionary function or duty exception to the [PSTCA]." The motion to dismiss was later converted to a motion for summary judgment.

At the hearing on the motion, three exhibits were offered and received without objection. The defense offered the

affidavit of the SID's manager, which had as an attachment a copy of the minutes from the July 7, 2020, SID board meeting. The Clarks offered two exhibits: (1) a certified copy of their complaint with attachments and (2) an affidavit from the Clarks' attorney attaching a copy of Kriss' license as a noncommercial pesticide applicator.

After receiving the evidence, the court heard arguments from the parties. Defense counsel's primary argument was that the Clarks' claim was barred by the PSTCA's discretionary function exemption.[3] In response, the Clarks argued that the discretionary function exemption was inapplicable because Nebraska's Pesticide Act did not give the SID or Kriss discretion to mix, use, or apply herbicides in a manner inconsistent with its labeling. The court took the matter under advisement.

In an order entered March 8, 2021, the court denied the motion for summary judgment. It limited its analysis to the applicability of the discretionary function exemption, finding that the SID and Kriss had abandoned any other theory. The court concluded that the SID and Kriss were not entitled to summary judgment based on the discretionary function exemption, citing to § 2-2643.01 of Nebraska's Pesticide Act, which provides in relevant part:

> A license holder shall not:
>
> (1) Make a pesticide recommendation or use a pesticide in a manner inconsistent with the pesticide's labeling or with the restrictions on the use of the pesticide imposed by the state, the federal agency, or the federal act;
>
> (2) Operate in a faulty, careless, or negligent manner.

Relying on this statute, and noting there was no factual dispute that Kriss was a license holder under Nebraska's Pesticide Act or that he had overapplied an off-label herbicide mixture, the court reasoned:

> The discretionary function exemption does not apply when a statute, regulation or policy specifically describes

---

[3] See § 13-910(2).

> a course of action. [Section 2-2643.01] prescribes a specific course of action. It requires license holders to use a pesticide only according to its labeling. The law does not allow a choice for Kriss and the challenged conduct does not involve an element of judgment. Kriss was not allowed to violate the statute.

The court therefore concluded that Kriss' conduct in improperly mixing and overapplying the herbicide mixture did not fall within the discretionary function exemption, and it denied the summary judgment motion. The SID and Kriss filed this timely appeal, which we moved to our docket on our own motion. For ease of reference, the remainder of our opinion will refer to the appellants collectively as "the SID."

## ASSIGNMENTS OF ERROR

The SID assigns, consolidated and restated, that the district court erred in denying its motion for summary judgment, because (1) the discretionary function exemption applies to bar the Clarks' claims and (2) the Clarks did not comply with the "final disposition" requirements of the PSTCA.

## STANDARD OF REVIEW

[1] Whether a plaintiff's negligence claims are precluded by an exemption to the PSTCA is a question of law for which an appellate court has a duty to reach its conclusions independent of the conclusions reached by the district court.[4]

[2] An appellate court reviews the district court's ruling on a motion for summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.[5]

---

[4] *Mercer v. North Central Serv.*, 308 Neb. 224, 953 N.W.2d 551 (2021).

[5] See *Waldron v. Roark*, 298 Neb. 26, 902 N.W.2d 204 (2017). Accord *Holloway v. State*, 293 Neb. 12, 875 N.W.2d 435 (2016) (appellate court reviews de novo whether party is entitled to dismissal of claim based on immunity, drawing all reasonable inferences for nonmoving party).

## ANALYSIS

### Appellate Jurisdiction

[3] Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it, irrespective of whether the issue is raised by the parties.[6]

[4] The SID seeks interlocutory appellate review of an order denying a motion for summary judgment. The general rule is that an order denying summary judgment is not a final, appealable order.[7] But in 2019, in response to our opinion in *E.D. v. Bellevue Pub. Sch. Dist.*,[8] the Legislature carved out a limited exception to this general rule and amended § 25-1902 to create a new category of final orders for purposes of appeal.[9] Under § 25-1902(1)(d), a final order now includes "[a]n order denying a motion for summary judgment when such motion is based on the assertion of sovereign immunity or the immunity of a government official."

We have issued three opinions relying on § 25-1902(1)(d) as the basis for our appellate jurisdiction: *Great Northern Ins. Co. v. Transit Auth. of Omaha* (*Great Northern II*),[10] *Mercer v. North Central Serv.*,[11] and *Great Northern Ins. Co. v. Transit Auth. of Omaha* (*Great Northern I*).[12] In each case, the parties characterized the summary judgment motion at issue as being

---

[6] *Cattle Nat. Bank & Trust Co. v. Watson*, 293 Neb. 943, 880 N.W.2d 906 (2016).

[7] See, e.g., *Carney v. Miller*, 287 Neb. 400, 842 N.W.2d 782 (2014).

[8] *E.D. v. Bellevue Pub. Sch. Dist.*, 299 Neb. 621, 909 N.W.2d 652 (2018) (overruling prior cases which relied on collateral order doctrine to authorize interlocutory appeals from orders denying sovereign immunity).

[9] See 2019 Neb. Laws, L.B. 179, § 1.

[10] *Great Northern Ins. Co. v. Transit Auth. of Omaha*, 308 Neb. 916, 958 N.W.2d 378 (2021).

[11] *Mercer, supra* note 4.

[12] *Great Northern Ins. Co. v. Transit Auth. of Omaha*, 305 Neb. 609, 941 N.W.2d 497 (2020).

based on the assertion of sovereign immunity, and no one challenged that characterization. Consequently, we have not yet analyzed the circumstances under which a summary judgment motion will satisfy the requirements of § 25-1902(1)(d). We consider that question now as it regards "the assertion of sovereign immunity," and we ultimately conclude that § 25-1902(1)(d) applies more narrowly than our prior opinions might suggest.

[5,6] Before turning to the language of the statute, we review familiar principles of statutory construction. To discern the meaning of a statute, courts must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense; it is our duty to discover, if possible, the Legislature's intent from the statutory text itself.[13] When the Legislature uses legal terms of art in statutes, such terms should be construed and understood according to their accepted legal meaning.[14]

[7] The plain text of § 25-1902(1)(d) sets out two requirements which must be satisfied for an order to be final: (1) The order must deny a motion for summary judgment, and (2) the summary judgment motion must be based on either "the assertion of sovereign immunity" or "the immunity of a government official." In this interlocutory appeal, there is no question the district court's order denied the SID's motion for summary judgment. And because no party contends the SID's motion was based on "the immunity of a governmental official," our appellate jurisdiction turns on whether the SID's motion was based on "the assertion of sovereign immunity." We limit our statutory analysis accordingly.

[8,9] "Sovereign immunity" is a legal term of art referring to the common-law doctrine of sovereign immunity. Under

---

[13] See *State v. Hofmann*, 310 Neb. 609, 967 N.W.2d 435 (2021).

[14] See, *Seivert v. Alli*, 309 Neb. 246, 959 N.W.2d 777 (2021); *State ex rel. Peterson v. Creative Comm. Promotions*, 302 Neb. 606, 924 N.W.2d 664 (2019).

that doctrine, a state's immunity from suit is recognized as a fundamental aspect of sovereignty.[15] The doctrine of sovereign immunity is, by its nature, jurisdictional.[16]

[10] The sovereign immunity of the State and its political subdivisions is preserved in Neb. Const. art. V, § 22, which provides: "The state may sue and be sued, and the Legislature shall provide by law in what manner and in what courts suits shall be brought." We have long held that this constitutional provision is not self-executing and that no suit may be maintained against the State or its political subdivisions unless the Legislature, by law, has so provided.[17]

[11,12] Through enactment of the PSTCA and the State Tort Claims Act (STCA), the Legislature has allowed a limited waiver of sovereign immunity with respect to some, but not all, types of tort claims.[18] Both the STCA and the PSTCA expressly exempt certain claims from the limited waiver of sovereign immunity.[19] And because the statutory exemptions identify those tort claims for which the sovereign retains immunity from suit, we have long held that when an exemption under the STCA or the PSTCA applies, the proper remedy is to dismiss the claim for lack of subject matter jurisdiction.[20]

[13] As such, we hold that when a motion for summary judgment asserts that the plaintiff's claim falls within one or more of the statutory exemptions under the STCA or the PSTCA, the motion is based on the assertion of sovereign immunity within the meaning of § 25-1902(1)(d).

---

[15] See, *Burke v. Board of Trustees*, 302 Neb. 494, 924 N.W.2d 304 (2019); *State ex rel. Rhiley v. Nebraska State Patrol*, 301 Neb. 241, 917 N.W.2d 903 (2018).

[16] *Davis v. State*, 297 Neb. 955, 902 N.W.2d 165 (2017).

[17] E.g., *Edwards v. Douglas County*, 308 Neb. 259, 953 N.W.2d 744 (2021).

[18] See *id.*

[19] See, § 13-910 (setting out claims exempt from PSTCA); Neb. Rev. Stat. § 81-8,219 (Cum. Supp. 2020) (setting out claims exempt from STCA).

[20] See *Edwards, supra* note 17.

[14,15] But the doctrine of sovereign immunity is not implicated by every affirmative defense which may be available to a State or political subdivision in response to a lawsuit. An example of this can be found in the presuit claim presentment requirements under both the STCA and the PSTCA.[21] A State or political subdivision can seek dismissal of a tort action for failing to comply with these administrative requirements,[22] but as we explained in *Saylor v. State*,[23] the presuit claim procedures do not implicate either sovereign immunity or subject matter jurisdiction:

> The presuit claim procedures under the PSTCA and the STCA are not statutes in derogation of sovereign immunity, but, rather, they are administrative in nature, intended to give the government notice of a recent tort claim so [that] it can investigate and, if appropriate, resolve the claim before suit is commenced. Unlike statutes in derogation of sovereign immunity, the presuit claim procedures do not identify the particular tort claims for which the State has conditionally waived its sovereign immunity and consented to suit, nor do they identify the tort claims the State has exempted from that waiver. Instead, the presuit claim presentment requirements are procedural conditions precedent to commencing a tort action against the government in district court; they are not jurisdictional.

[16] Our recent cases illustrate that while a plaintiff's failure to comply with the presuit claim procedures may be asserted as an affirmative defense to avoid liability in an action brought under the STCA or the PSTCA,[24] the administrative

---

[21] § 13-905 (setting out presuit claim presentment requirements under PSTCA); Neb. Rev. Stat. § 81-8,212 (Reissue 2014) (setting out presuit claim presentment requirements under STCA).

[22] See, e.g., *Great Northern II, supra* note 10.

[23] *Saylor v. State*, 306 Neb. 147, 162-63, 944 N.W.2d 726, 736-37 (2020).

[24] See *Great Northern II, supra* note 10.

requirements are not jurisdictional,[25] and thus do not bear directly on the question of sovereign immunity.[26]

[17] As such, we hold that when the State or a political subdivision moves for summary judgment asserting the failure to comply with the presuit claim procedures of the STCA or the PSTCA, the motion is not "based on the assertion of sovereign immunity" for purposes of § 25-1902(1)(d). We acknowledge there is tension between this holding and our recent opinions in *Great Northern I*[27] and *Great Northern II*.[28]

In *Great Northern I*, the city moved for summary judgment, asserting the plaintiff had not complied with the notice requirements under the PSTCA. The district court denied summary judgment, and the city appealed from that ruling, arguing that because the presuit notice requirements were not met, the city "never waived sovereign immunity."[29] The Nebraska Court of Appeals summarily dismissed the appeal after concluding the order denying summary judgment was interlocutory and thus not a final order. We granted further review to consider the city's contention that the recent amendments to § 25-1902 rendered the order denying summary judgment a final, appealable order.

In *Great Northern I*, no one challenged the city's contention that the failure to comply with the presuit notice requirements implicated sovereign immunity, and we did not examine that issue. We focused instead on the issue presented, which was whether the new final order provisions in § 25-1902(1)(d) represented a substantive or a procedural change to that statute. We concluded the statutory changes were procedural in nature, and thus governed all appeals pending on and after the effective date of the statutory amendment. Because the city had

---

[25] *Id.*; *Saylor, supra* note 23.

[26] *Id.*

[27] *Great Northern I, supra* note 12.

[28] *Great Northern II, supra* note 10.

[29] *Great Northern I, supra* note 12, 305 Neb. at 611, 941 N.W.2d at 499.

filed its notice of appeal after the effective date of the statute, we concluded the new final order provisions governed the appeal; we therefore reversed the Court of Appeals' dismissal and remanded the matter for further appellate proceedings. Once the appellate briefs were submitted, we moved the case back to our docket, resulting in our decision on the merits in *Great Northern II*.[30]

But we did not examine, in either *Great Northern I* or *Great Northern II*, whether the city had correctly characterized its summary judgment motion as one which was based on the assertion of sovereign immunity. In retrospect, and with the benefit of our analysis in *Saylor*, which was decided 2 months after *Great Northern I*, it is apparent that despite the city's characterization, its motion did not actually assert a claim of sovereign immunity, but, rather, asserted the affirmative defense that plaintiffs had not complied with the presuit notice procedures. Thus, to the extent either *Great Northern I* or *Great Northern II* can be read to suggest that a motion for summary judgment based on the failure to comply with the PSTCA's presuit procedures is one "based on the assertion of sovereign immunity" for purposes of § 25-1902(1)(d), that reading is expressly disapproved.[31]

[18] We now hold that to satisfy the final order requirement under § 25-1902(1)(d) based on the assertion of sovereign immunity, the motion for summary judgment must do more than merely reference sovereign immunity; the nature and substance of the motion must actually present a claim of sovereign immunity. To hold otherwise would permit litigants to create appellate jurisdiction simply by casting their claim as one implicating sovereign immunity.

Applying the foregoing jurisdictional analysis to the present interlocutory appeal, we conclude that one of the SID's

---

[30] *Great Northern II, supra* note 10.

[31] See *Saylor, supra* note 23.

assigned errors is reviewable under § 25-1902(1)(d), but the other is not. We have appellate jurisdiction to review the SID's assignment that the court erred in denying summary judgment based on the applicability of the discretionary function exemption, because that aspect of the SID's motion was based on the assertion of sovereign immunity.

[19] But the SID also assigns error to the court's refusal to grant summary judgment based on a failure to comply with the "final disposition" requirement under the PSTCA. That procedural requirement is found in § 13-906 and is one of the presuit claim procedures under the PSTCA.[32] In their appellate briefing, the parties dispute whether the SID even raised the final disposition issue before the district court. We do not address that issue, however, because even if the issue was properly presented, we would lack jurisdiction to review it under § 25-1902(1)(d). As already discussed, summary judgment motions asserting the failure to comply with the presuit claim procedures are not "based on the assertion of sovereign immunity" for purposes of § 25-1902(1)(d). While an appellate court can reverse, vacate, or modify a final order under § 25-1902(1)(d), it cannot address issues that do not bear on the correctness of the final order upon which its appellate jurisdiction is based.[33]

We therefore dismiss the SID's second assignment of error for lack of appellate jurisdiction and limit our interlocutory appellate review to a single issue: whether the district court erred in denying the SID's summary judgment motion based on the discretionary function exemption.

### No Error in Denying Summary Judgment Based on Discretionary Function Exemption

In connection with its summary judgment motion, the SID did not dispute that Kriss mixed or combined herbicides

---

[32] See *id.*

[33] *State v. Loyd*, 269 Neb. 762, 696 N.W.2d 860 (2005).

in a manner inconsistent with their labels. Nor did it dispute that he overapplied the off-label mixture when spraying the trees. Instead, the SID argued that Kriss "ha[d] discretion with regard to [the] use of herbicides"[34] and therefore, the discretionary function exemption barred the Clarks' claims.

[20] Under the discretionary function exemption, the PSTCA shall not apply to "[a]ny claim based upon the exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of the political subdivision or an employee of the political subdivision, whether or not the discretion is abused."[35] We have explained that under this exemption, the performance or nonperformance of a discretionary function cannot be the basis of liability under the PSTCA.[36]

[21] A court engages in a two-step analysis to determine whether the discretionary function exemption to the PSTCA applies.[37] First, the court must consider whether the action is a matter of choice for the acting employee.[38] We have said this inquiry is mandated by the language of the statutory exemption, because conduct cannot be discretionary unless it involves an element of judgment or choice.[39] Second, if the court concludes that the challenged conduct involved an element of judgment, it must then determine whether that judgment is

---

[34] Brief for appellants at 14.

[35] § 13-910(2).

[36] See *Jasa v. Douglas County*, 244 Neb. 944, 510 N.W.2d 281 (1994). See, also, *Holloway, supra* note 5 (state actor's performance or nonperformance of discretionary function cannot be basis for liability under STCA).

[37] *Mercer, supra* note 4.

[38] *Id.*

[39] See *Jasa, supra* note 36. See, also, *Berkovitz v. United States*, 486 U.S. 531, 108 S. Ct. 1954, 100 L. Ed. 2d 531 (1988) (explaining that inquiring into whether action is matter of choice for acting employee is mandated by language of exception; conduct cannot be discretionary unless it involves element of judgment or choice).

the kind the discretionary function exemption was designed to shield.[40]

The district court in this case denied the SID's motion for summary judgment after analyzing only the first inquiry. It concluded the SID could not show that the challenged conduct of improperly mixing and overapplying an off-label herbicide involved a matter of choice or an element of judgment on the part of Kriss. On our de novo review, we reach the same conclusion.

[22] We have recognized that the discretionary function exemption will not apply when a statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because in that event, the employee has no rightful option but to adhere to the directive.[41] And if the employee's conduct cannot appropriately be the product of judgment or choice, then there is no discretion in the conduct for the discretionary function exemption to protect.[42]

We agree with the district court's conclusion that § 2-2643.01 prescribes the course of conduct Kriss was required to follow when mixing and applying herbicides, and he thus had no choice or option not to adhere to that directive. The allegedly negligent conduct at issue was mixing or combining herbicides in a manner inconsistent with their labels, and then overapplying the off-label mixture. Section 2-2643.01 of Nebraska's Pesticide Act expressly prohibits license holders like Kriss from using a pesticide "in a manner inconsistent with the pesticide's labeling" and from operating in a "careless, or negligent manner." The act defines "[p]esticide" to include any "substance or mixture of substances intended for use as a plant regulator, defoliant, or desiccant, including any biological

---

[40] *Mercer, supra* note 4.

[41] See, *Jasa, supra* note 36; *Williams v. City of Lincoln*, 27 Neb. App. 414, 932 N.W.2d 490 (2019). See, also, *Berkovitz, supra* note 39.

[42] *Berkovitz, supra* note 39.

control agent."[43] As such, the statutory definition of "pesticide" includes herbicides. The stated purpose of the act is "to regulate, in the public interest, the labeling, distribution, storage, transportation, use, application, and disposal of pesticides for the protection of human health and the environment."[44] The act notes that while "pesticides are valuable to our state's agricultural production and to the protection of humans and the environment from insects, rodents, weeds, and other forms of life which may be pests," it is "essential to the public health and the welfare that pesticides be regulated to prevent adverse effects on humans and the environment," including "[c]rops or other plants [that may be] injured by improper use of pesticides."[45] Notably, the SID did not offer any regulation, policy, or ordinance purporting to give the SID or its employees discretion to mix herbicides in a manner inconsistent with the product's labeling. But even if it had, Nebraska's Pesticide Act expressly preempts any "ordinances and resolutions by political subdivisions that prohibit or regulate any matter relating to the . . . handling, use, application, or disposal of pesticides."[46]

The district court correctly concluded that § 2-2643.01 specifically prescribes the course of conduct to be followed by license holders like Kriss when mixing and applying herbicides, and as a result, Kriss had no choice but to adhere to that course of conduct. Because Kriss had no discretion to exercise with regard to the challenged conduct, the first inquiry of the discretionary function test could not be satisfied and the district court correctly denied summary judgment.

In its appellate brief, the SID generally acknowledges that the Pesticide Act regulates the handling, use, and application of pesticides and that it prohibits license holders like Kriss

---

[43] § 2-2624.

[44] § 2-2623.

[45] *Id.*

[46] § 2-2625.

from using a pesticide in a manner inconsistent with its labeling. But the SID contends that the regulatory provisions of the Pesticide Act "are not relevant [to the discretionary function inquiry] unless they create private civil tort liability when they are violated."[47] This contention is meritless.

The principles of law governing whether a statute creates a private right of action have no direct bearing on whether the statute prescribes a course of conduct for purposes of the discretionary function inquiry. Appellate courts in this state have consistently looked to policy and procedure manuals,[48] municipal ordinances,[49] and statutes[50] when deciding whether an actor's conduct was a matter of choice for purposes of the discretionary function exemption. In none of those cases did it matter whether the ordinance or statute was also recognized as creating a private right of action. Because the provisions of Nebraska's Pesticide Act governed Kriss' conduct in mixing, using, and applying the herbicide mixture, those provisions are relevant to the discretionary function exemption inquiry, regardless of whether the act creates a private right of action.

On this record, the district court correctly concluded that the SID did not, and cannot, satisfy the first inquiry under the

---

[47] Brief for appellants at 16.

[48] See, e.g., *Mercer, supra* note 4 (considering utility district's procedures and manuals in determining whether challenged conduct involved matter of judgment for purposes of discretionary function exemption to PSTCA).

[49] See, e.g., *Williams, supra* note 41 (considering municipal code and other municipal provisions to determine whether challenged conduct involved element of choice for purposes of discretionary function exemption to PSTCA).

[50] See, e.g., *Holloway, supra* note 5 (analyzing statute contained in Nebraska Mental Health Commitment Act to determine whether challenged conduct involved an element of choice under discretionary function exemption to STCA); *Kimminau v. City of Hastings*, 291 Neb. 133, 864 N.W.2d 399 (2015) (considering pertinent traffic statute to determine whether challenged conduct involved matter of discretion).

discretionary function exemption. The SID's motion for summary judgment based on the discretionary function exemption was properly denied.

## CONCLUSION

For the foregoing reasons, we affirm the order of the district court to the extent it denied summary judgment based on the discretionary function exemption. Because that is the only issue over which we have appellate jurisdiction, we dismiss the remainder of this appeal.

Affirmed in part, and in part dismissed.

Miller-Lerman, J., not participating.