Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/19/2024 09:09 AM CDT

Community Care Health Plan of Nebraska, Inc.,
doing business as Healthy Blue, a Nebraska
domestic corporation, appellee, v.
Jason Jackson, in his official capacity as
director of the Nebraska Department
of Administrative Services,
et al., appellants.

___ N.W.3d ___

Filed July 19, 2024.    No. S-23-681.

1. **Summary Judgment: Appeal and Error.** An appellate court reviews the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.

2. **Summary Judgment: Final Orders: Legislature: Appeal and Error.** The general rule is that an order denying summary judgment is not a final, appealable order. But the Legislature carved out a limited exception to this general rule when it enacted Neb. Rev. Stat. § 25-1902(1)(d) (Cum. Supp. 2022) to create a new category of final orders for purposes of appeal.

3. **Summary Judgment: Final Orders: Immunity.** The plain text of Neb. Rev. Stat. § 25-1902(1)(d) (Cum. Supp. 2022) sets out two requirements which must be satisfied for an order to be final: (1) The order must deny a motion for summary judgment, and (2) the summary judgment motion must be based on either the assertion of sovereign immunity or the immunity of a government official.

4. ____: ____: ____. To satisfy the final order requirement under Neb. Rev. Stat. § 25-1902(1)(d) (Cum. Supp. 2022) based on the assertion of sovereign immunity, the motion for summary judgment must do more than merely reference sovereign immunity; the nature and substance of the motion must actually present a claim of sovereign immunity.

5. **Immunity: Words and Phrases.** "Sovereign immunity" is a legal term of art referring to the common-law doctrine of sovereign immunity.

- 142 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
317 NEBRASKA REPORTS
COMMUNITY CARE HEALTH PLAN OF NEB. v. JACKSON
Cite as 317 Neb. 141

Under that doctrine, a state's immunity from suit is recognized as a fundamental aspect of sovereignty.

6. **Actions: Public Officers and Employees: Immunity.** An action against a public officer to obtain relief from an invalid act or from an abuse of authority by the officer or agent is not a suit against the State and is not prohibited by sovereign immunity.

Appeal from the District Court for Lancaster County, ANDREW R. JACOBSEN, Judge. Appeal dismissed.

Michael T. Hilgers, Attorney General, Zachary A. Viglianco, Eric J. Hamilton, and John J. Schoettle for appellants.

Andre R. Barry and Jessica K. Robinson, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., and James A. Washburn, William M. Droze, and Christopher R. Healy, of Troutman Pepper Hamilton Sanders, L.L.P., for appellee.

HEAVICAN, C.J., CASSEL, STACY, FUNKE, and FREUDENBERG, JJ.

FUNKE, J.

## INTRODUCTION

Neb. Rev. Stat. § 25-1902(1)(d) (Cum. Supp. 2022) provides that an order denying a motion for summary judgment is a final, appealable order when such motion is based on the assertion of sovereign immunity or the immunity of a government official. This case raises the question of whether a motion for summary judgment alleging that a disappointed bidder lacks standing as a taxpayer to maintain a claim against public officers under the Uniform Declaratory Judgments Act (UDJA)[1] constitutes a motion for summary judgment based on the assertion of sovereign immunity. Because the public officers do not assign any error as to the district court's ruling that the suit against them was not a suit against the State

---

[1] Neb. Rev. Stat. §§ 25-21,149 to 25-21,164 (Reissue 2016).

- 143 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
317 NEBRASKA REPORTS
COMMUNITY CARE HEALTH PLAN OF NEB. v. JACKSON
Cite as 317 Neb. 141

and, as such, was not barred by sovereign immunity, we find that it does not. Accordingly, we dismiss the appeal for lack of jurisdiction.

## BACKGROUND

### FACTUAL BACKGROUND

Community Care Health Plan of Nebraska, Inc., doing business as Healthy Blue (Healthy Blue), was one of five vendors that submitted proposals in response to a request for proposals to operate Nebraska's Medicaid managed care program effective January 1, 2024. The Nebraska Department of Health and Human Services (DHHS) selected three of the vendors to be awarded contracts. Healthy Blue was not among those selected.

Healthy Blue filed a bid protest with DHHS alleging defects in the winning proposals and in DHHS' evaluation of the proposals. The protest was denied. Healthy Blue requested reconsideration. That request was also denied.

### HEALTHY BLUE'S COMPLAINT

Healthy Blue then filed suit in the district court for Lancaster County, Nebraska, against Jason Jackson, in his official capacity as director of the Department of Administrative Services; Dannette Smith, in her official capacity as chief executive officer of DHHS; and the winning bidders. Hereinafter, we refer to Jackson and Smith collectively as the "State Officials."

Healthy Blue's verified complaint and petition for writ of mandamus included multiple counts, only one of which is relevant to this appeal. In that count, Healthy Blue sought declaratory and injunctive relief under the UDJA as a taxpayer and as a "bidder entitled to an award of a contract under the terms of the [request for proposals]." Specifically, Healthy Blue sought a declaration that DHHS acted unlawfully in awarding the contracts. Healthy Blue also sought a declaration that the "Notice of Intent to Award" the contracts

and any resulting contracts violate Nebraska law and would result in the illegal expenditure of state funds and harm to the public interest, as well as an order enjoining DHHS from "implementation activities" or performance of the contracts.

## STATE OFFICIALS' MOTION TO DISMISS

The State Officials moved to dismiss Healthy Blue's UDJA claim on the ground that Healthy Blue lacks standing to maintain the claim as a taxpayer or as an "unsuccessful bidder." The State Officials also raised other arguments, including, as relevant here, that Healthy Blue's UDJA claim is barred by sovereign immunity. The State Officials acknowledged that sovereign immunity does not bar an action against a public officer to obtain relief from an invalid act or from an abuse of authority by an officer because a court regards public officers' illegal or unauthorized acts as their own acts and not acts of the State. But the State Officials argued that Healthy Blue lacks standing under the UDJA to pursue such an official-capacity suit for the reasons stated.

The district court overruled the State Officials' motion. The district court agreed that unsuccessful bidders lack standing except in "egregious cases" where the public interest is implicated. However, the district court declined to decide whether the public interest exception applies here. Instead, the district court found that Healthy Blue adequately pled taxpayer standing. In so finding, the district court rejected the State Officials' argument that *Griffith v. Nebraska Dept. of Corr. Servs.*[2] "impliedly abrogated taxpayer standing under the [UDJA]." The district court explained that *Griffith* looked to the language of Nebraska's Administrative Procedure Act (APA) in finding that the plaintiffs in *Griffith* lacked standing to maintain a suit under the APA as taxpayers. But the district court reasoned that the UDJA differed from the APA

---

[2] *Griffith v. Nebraska Dept. of Corr. Servs.*, 304 Neb. 287, 934 N.W.2d 169 (2019).

- 145 -

Nebraska Supreme Court Advance Sheets
317 Nebraska Reports
COMMUNITY CARE HEALTH PLAN OF NEB. v. JACKSON
Cite as 317 Neb. 141

in that it did not waive the State's sovereign immunity, among other things.

The district court also rejected the State Officials' argument that sovereign immunity bars Healthy Blue's UDJA claim. The district court observed that the State Officials' "argument on this point [was] not well developed" but that the winning bidders argued that Healthy Blue's claim should be seen as a claim against the State because the relief requested would require the expenditure of public funds. However, the district court concluded that the question of "whether public funds would be expended" was a factual one that "cannot be decided on the face of the [c]omplaint."

### State Officials' Motion For
### Summary Judgment

Several months later, the State Officials moved for summary judgment, arguing that "[s]overeign immunity precludes taxpayer standing" and, as such, "Healthy Blue's UDJA claim is barred by sovereign immunity." In summary, the State Officials argued that because official-capacity suits "are an *exception*" to the State's sovereign immunity, and because such exceptions must be strictly construed, the UDJA precludes taxpayer standing because it does not expressly provide for such standing. The State Officials also argued that Healthy Blue's claim is a claim against the State because Healthy Blue seeks to compel affirmative acts that would require the expenditure of public funds and seeks retrospective relief. As such, the State Officials argued that the claim did not fall within the exception for official-capacity suits.

The district court disagreed. As to the State Officials' argument that Healthy Blue's claim was a claim against the State, the district court found that Healthy Blue's request to enjoin the expenditure of public funds under allegedly unlawful contracts "plainly seeks relief from an invalid act or abuse of authority." The court noted that generally, suits against public officers in their official capacity for relief from an invalid

- 146 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
317 NEBRASKA REPORTS
COMMUNITY CARE HEALTH PLAN OF NEB. v. JACKSON
Cite as 317 Neb. 141

act or an abuse of authority are not barred by sovereign immunity.[3] The district court also rejected the State Officials' argument that Healthy Blue's requested relief would require the expenditure of public funds or constituted retrospective relief. Therefore, the district court concluded that Healthy Blue's claim was an official-capacity one and, as such, was not barred by sovereign immunity. This ruling was not appealed by the State Officials.

Similarly, as to the State Officials' argument that sovereign immunity precludes taxpayer standing under the UDJA, the district court found that "the reasoning in *Griffith* . . . does not 'map' onto this case." The district court distinguished *Griffith* on the ground that the plaintiffs in *Griffith* sued a state agency, while Healthy Blue sued public officers in their official capacity, among other things. Accordingly, the district court concluded that because the State Officials do not have sovereign immunity, "there is no need to look for a statutory waiver" of such immunity. This ruling was appealed by the State Officials, and we granted their petition to bypass review by the Nebraska Court of Appeals.[4]

## ASSIGNMENT OF ERROR

The State Officials assign, restated, that the district court erred in finding that Healthy Blue has standing as a taxpayer to sue them under the UDJA "despite the State [Officials'] sovereign immunity, which requires the UDJA to be narrowly construed."

## STANDARD OF REVIEW

[1] An appellate court reviews the district court's grant of summary judgment de novo, viewing the record in the light

---

[3] See, e.g., *Heist v. Nebraska Dept. of Corr. Servs.*, 312 Neb. 480, 979 N.W.2d 772 (2022).

[4] See Neb. Rev. Stat. § 24-1106(2) (Cum. Supp. 2022).

- 147 -

Nebraska Supreme Court Advance Sheets
317 Nebraska Reports
COMMUNITY CARE HEALTH PLAN OF NEB. v. JACKSON
Cite as 317 Neb. 141

most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.[5]

## ANALYSIS

Before reaching the merits of the State Officials' arguments regarding taxpayer standing and the UDJA, we must first address whether we have jurisdiction over this appeal.[6]

[2,3] The general rule is that an order denying summary judgment is not a final, appealable order.[7] But the Legislature carved out a limited exception to this general rule when it enacted § 25-1902(1)(d) to create a new category of final orders for purposes of appeal.[8] Specifically, § 25-1902(1)(d) provides that an order denying a motion for summary judgment is a final, appealable order "when such motion is based on the assertion of sovereign immunity or the immunity of a government official." As quoted here, the plain text of § 25-1902(1)(d) sets out two requirements which must be satisfied for an order to be final: (1) The order must deny a motion for summary judgment, and (2) the summary judgment motion must be based on either the assertion of sovereign immunity or the immunity of a government official.[9]

In the present case, there is no dispute that the district court denied, in relevant part, the State Officials' motion for summary judgment on Healthy Blue's UDJA claim. The question is whether the State Officials' motion for summary judgment was based on the assertion of sovereign immunity.

Healthy Blue argues that the State Officials' motion was not actually based on sovereign immunity, but, rather, it

---

[5] *Griffith v. LG Chem America*, 315 Neb. 892, 1 N.W.3d 899 (2024).

[6] See *Simpson v. Lincoln Public Schools*, 316 Neb. 246, 4 N.W.3d 172 (2024) (before reaching legal issues presented for review, it is duty of appellate court to determine whether it has jurisdiction over matter).

[7] *Id*.

[8] *Id*.

[9] *Clark v. Sargent Irr. Dist.*, 311 Neb. 123, 971 N.W.2d 298 (2022).

- 148 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
317 NEBRASKA REPORTS
COMMUNITY CARE HEALTH PLAN OF NEB. v. JACKSON
Cite as 317 Neb. 141

"'merely reference[d]'" sovereign immunity as a "veneer over their real argument: a broadside attack on taxpayer standing."[10] As such, Healthy Blue argues that we lack jurisdiction over this appeal.

The State Officials counter that we have jurisdiction because "[t]he question of whether Healthy Blue's request for UDJA declaratory relief is properly within the scope of [the exception for official-capacity suits] is not tangentially related to the [State Officials'] assertion of sovereign immunity, it is *directly determined* by it."[11] The State Officials also argue that their appeal "directly invokes" a "'foundational principle' of Nebraska 'sovereign immunity jurisprudence,'"[12] namely, the rule that statutes purporting to waive sovereign immunity are strictly construed in favor of the sovereign and against the waiver.

[4,5] In our initial opinions relying on § 25-1902(1)(d) as the basis for appellate jurisdiction, the parties' characterization of the summary judgment motion at issue as being based on the assertion of sovereign immunity was unchallenged.[13] As such, we did not analyze what constitutes a motion for summary judgment based on the assertion of sovereign immunity for purposes of § 25-1902(1)(d). However, our subsequent decisions in *Clark v. Sargent Irr. Dist.*[14] and *Simpson v. Lincoln Public Schools*[15] held that to satisfy the final order requirement under § 25-1902(1)(d) based on the assertion of

---

[10] Brief for appellee at 19.

[11] Reply brief for appellants at 13.

[12] *Id*. at 14.

[13] See, *Great Northern Ins. Co. v. Transit Auth. of Omaha*, 308 Neb. 916, 958 N.W.2d 378 (2021), *disapproved, Clark, supra* note 9; *Mercer v. North Central Serv.*, 308 Neb. 224, 953 N.W.2d 551 (2021); *Great Northern Ins. Co. v. Transit Auth. of Omaha*, 305 Neb. 609, 941 N.W.2d 497 (2020), *disapproved, Clark, supra* note 9.

[14] *Clark, supra* note 9.

[15] *Simpson, supra* note 6.

- 149 -

Nebraska Supreme Court Advance Sheets
317 Nebraska Reports
COMMUNITY CARE HEALTH PLAN OF NEB. v. JACKSON
Cite as 317 Neb. 141

sovereign immunity, the motion for summary judgment "must do more than merely reference sovereign immunity; the nature and substance of the motion must actually present a claim of sovereign immunity."[16] *Clark* and *Simpson* also make clear that as used in § 25-1902(1)(d), "sovereign immunity" is a legal term of art referring to the common-law doctrine of sovereign immunity.[17] Under that doctrine, a state's immunity from suit is recognized as a fundamental aspect of sovereignty.[18]

In *Clark*, the district court denied the plaintiffs' motion for summary judgment on their negligence claims against a political subdivision because it found that the claims were barred under the discretionary function exemption of the Political Subdivisions Tort Claims Act (PSTCA) and that the plaintiffs failed to comply with the PSTCA's presuit claim procedures.[19] The plaintiffs appealed, and we found that we had jurisdiction to review their assignment of error as to the discretionary function exemption.[20] We reasoned that the proper remedy when an exemption under the State Tort Claims Act (STCA) or PSTCA applies is to dismiss the claim for lack of subject matter jurisdiction.[21] Accordingly, we held that "when a motion for summary judgment asserts that the plaintiff's claim falls within one or more of the statutory exemptions under the STCA or the PSTCA, the motion is based on the assertion of sovereign immunity within the meaning of § 25-1902(1)(d)."[22]

We took a different view as to the plaintiffs' assignment of error regarding the PSTCA's presuit claim procedures.[23]

---

[16] *Id*. at 254, 4 N.W.3d at 180 (quoting *Clark, supra* note 9).

[17] Cf. Clark*, supra* note 9.

[18] Cf. *id*.

[19] See *id*.

[20] See *id.*

[21] See *id.*

[22] *Id*. at 133, 971 N.W.2d at 308.

[23] See *Clark, supra* note 9.

- 150 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
317 NEBRASKA REPORTS
COMMUNITY CARE HEALTH PLAN OF NEB. v. JACKSON
Cite as 317 Neb. 141

Drawing upon an earlier opinion, which found that such procedures "'are not statutes in derogation of sovereign immunity, but, rather, they are administrative in nature,'"[24] we concluded that the procedures "are not jurisdictional[] and thus do not bear directly on the question of sovereign immunity."[25] We acknowledged that there was tension between this holding and prior opinions wherein we exercised jurisdiction under § 25-1902(1)(d) based on the political subdivision's assertion that "because the presuit notice requirements were not met, the [subdivision] 'never waived sovereign immunity.'"[26] However, we observed, as was previously noted, that no one in the earlier cases disputed the characterization of the motions in question as being based on sovereign immunity.[27] We then held that mere reference to sovereign immunity was not enough; instead, "the nature and substance of the motion must actually present a claim of sovereign immunity."[28] "To hold otherwise would permit litigants to create appellate jurisdiction simply by casting their claim as one implicating sovereign immunity."[29]

Our subsequent decision in *Simpson* is consistent with *Clark*.[30] In *Simpson*, we found that we had jurisdiction over a political subdivision's appeal of an order overruling its motion for summary judgment on the plaintiff's wrongful discharge claim.[31] The plaintiff argued that the motion was not based

[24] *Id*. at 134, 971 N.W.2d at 308 (quoting *Saylor v. State*, 306 Neb. 147, 944 N.W.2d 726 (2020)).

[25] *Id*. at 135, 971 N.W.2d at 308.

[26] *Id*. at 135, 971 N.W.2d at 309.

[27] See *Clark, supra* note 9.

[28] *Id*. at 136, 971 N.W.2d at 309.

[29] *Id*. at 136, 971 N.W.2d at 309-10.

[30] See, *Simpson, supra* note 6; *Clark, supra* note 9.

[31] *Simpson, supra* note 6.

- 151 -

Nebraska Supreme Court Advance Sheets
317 Nebraska Reports
COMMUNITY CARE HEALTH PLAN OF NEB. v. JACKSON
Cite as 317 Neb. 141

on the assertion of sovereign immunity because it stated only that there were no genuine issues of material fact.[32] The plaintiff also observed that the political subdivision made no mention of immunity in its statement of material facts.[33] We disagreed.[34] We found that the "substance" of the motion "as argued in both parties' briefing and as addressed by the district court" presented a claim of sovereign immunity.[35] In so finding, we also observed that the political subdivision alleged sovereign immunity as a defense in its answer.[36]

In light of *Clark* and *Simpson*, as well as the facts and circumstances of this case, we agree with Healthy Blue that the State Officials' motion for summary judgment was not based, in relevant part, on the assertion of sovereign immunity. Granted, the State Officials' answer, motion to dismiss, and motion for summary judgment asserted that they are protected by sovereign immunity. The State Officials' brief in support of its motion for summary judgment also argued that Healthy Blue's UDJA claim did not fall within the "exception" for official action claims and, as such, was barred by sovereign immunity. However, the district court rejected that argument, and as previously noted, the State Officials do not assign any error as to that ruling on appeal.[37]

Instead, the State Officials' sole assignment of error on appeal concerns the district court's finding that Healthy Blue has standing as a taxpayer to maintain its suit against them

---

[32] See *id.*

[33] *Id.*

[34] See *id.*

[35] *Id.* at 254, 4 N.W.3d at 180.

[36] *Simpson, supra* note 6.

[37] Cf. *State v. Clark*, 315 Neb. 736, 1 N.W.3d 487 (2024) (alleged error must be both specifically assigned and specifically argued in brief of party asserting error to be considered by appellate court).

- 152 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
317 NEBRASKA REPORTS
COMMUNITY CARE HEALTH PLAN OF NEB. v. JACKSON
Cite as 317 Neb. 141

under the UDJA "despite the State [Officials'] sovereign immunity, which requires the UDJA to be narrowly construed." That argument obviously also references sovereign immunity. However, none of the authorities cited by the State Officials persuade us that such an argument can be seen to be based on the assertion of sovereign immunity given their failure to appeal the district court's ruling that Healthy Blue's claim is an official-capacity claim and not a claim against the State.

The State Officials argue that Healthy Blue and the district court are mistaken in thinking that when the precedents authorizing official-capacity suits "are invoked, sovereign immunity principles simply do not apply."[38] Instead, the State Officials argue that there is an "initial, critical interpretive step. At the threshold, an official[-]capacity suit against a state official is a suit against the State that implicates its sovereign immunity."[39] As such, the State Officials maintain that the "first question that must be addressed is whether the State has consented to that suit by 'express language' or 'such overwhelming implication' as to permit 'no other reasonable construction.'"[40]

The State Officials do not, however, cite any cases that reflect the application of the initial question that they posit regarding whether the State has consented to an official-capacity suit. Instead, opinions from this and other jurisdictions show that the first question "'[w]hen an action is brought against an individual employee of a state agency'" is "'whether the action against the individual official is in reality an action against the state and therefore barred by

[38] Reply brief for appellants at 20.

[39] *Id*. at 22.

[40] *Id*. at 22-23.

- 153 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
317 NEBRASKA REPORTS
COMMUNITY CARE HEALTH PLAN OF NEB. v. JACKSON
Cite as 317 Neb. 141

sovereign immunity.'"[41] If the action is found to be in reality an action against the State, it is barred by sovereign immunity.[42] However, if the action is not found to be in reality an action against the State, it is not so barred,[43] on the theory that "acts of state officers not legally authorized, or which exceed or abuse the authority conferred upon them, are judicially regarded as their own acts and not acts of the [S]tate."[44]

---

[41] *State ex rel. Rhiley v. Nebraska State Patrol*, 301 Neb. 241, 249, 917 N.W.2d 903, 910 (2018) (quoting *State ex rel. Steinke v. Lautenbaugh*, 263 Neb. 652, 642 N.W.2d 132 (2002)). Cf., *Anthony K. v. Nebraska Dept. of Health & Human Servs.*, 289 Neb. 540, 855 N.W.2d 788 (2014); *Doe v. Board of Regents*, 280 Neb. 492, 788 N.W.2d 264 (2010), *overruled on other grounds, Davis v. State*, 297 Neb. 955, 902 N.W.2d 165 (2017); *Myers v. Nebraska Invest. Council*, 272 Neb. 669, 724 N.W.2d 776 (2006); *County of Lancaster v. State*, 247 Neb. 723, 529 N.W.2d 791 (1995). See, also, *Virginia Office for Protection and Advocacy v. Stewart*, 563 U.S. 247, 131 S. Ct. 1632, 179 L. Ed. 2d 675 (2011); *Federal Maritime Comm'n v. South Carolina Ports Authority*, 535 U.S. 743, 122 S. Ct. 1864, 152 L. Ed. 2d 962 (2002); *Alden v. Maine*, 527 U.S. 706, 119 S. Ct. 2240, 144 L. Ed. 2d 636 (1999); *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 117 S. Ct. 2028, 138 L. Ed. 2d 438 (1997); *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 113 S. Ct. 684, 121 L. Ed. 2d 605 (1993); *Antrican v. Odom*, 290 F.3d 178 (4th Cir. 2002); *Gibson v. Arkansas Dept. of Correction*, 265 F.3d 718 (8th Cir. 2001); *Gill v. Public Employees Retirement Bd.*, 135 N.M. 472, 90 P.3d 491 (2004); *Federal Sign v. Texas Southern University*, 951 S.W.2d 401 (Tex. 1997) (superseded by statute on other grounds as stated in *Nazari v. State*, 561 S.W.3d 495 (Tex. App. 2018)); *Carter v. Watson*, 181 Conn. App. 637, 187 A.3d 478 (2018).

[42] See, *Anthony K., supra* note 41; *Zawaideh v. Nebraska Dept. of Health & Human Servs.*, 285 Neb. 48, 825 N.W.2d 204 (2013) (discussing *County of Lancaster, supra* note 41); *Galyen v. Balka*, 253 Neb. 270, 570 N.W.2d 519 (1997); *State v. Mortensen*, 69 Neb. 376, 95 N.W. 831 (1903) (discussing *In re Ayers*, 123 U.S. 443, 8 S. Ct. 164, 31 L. Ed. 216 (1887), and *Hagood v. Southern*, 117 U.S. 52, 6 S. Ct. 608, 29 L. Ed. 805 (1886)).

[43] See, *Nebraska State Patrol, supra* note 41 (discussing *Lautenbaugh, supra* note 41); *Gillpatrick v. Sabatka-Rine*, 297 Neb. 880, 902 N.W.2d 115 (2017); *Myers,* supra note 41; *Mortensen, supra* note 42 (discussing *State ex rel. R. M. F. Co. v. Toole*, 26 Mont. 22, 66 P. 496 (1901)).

[44] *Nebraska State Patrol, supra* note 41, 301 Neb. at 250, 917 N.W.2d at 910 (internal quotation marks omitted).

- 154 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
317 NEBRASKA REPORTS
COMMUNITY CARE HEALTH PLAN OF NEB. v. JACKSON
Cite as 317 Neb. 141

[6] This and other courts have sometimes opined that the State's interests are "implicated to a certain extent" in official-capacity suits[45] or that because the State can only act through its officers, an official-capacity suit is "'in effect, [a suit] against the [S]tate.'"[46] However, such statements fall short of the State Officials' claim that an official-capacity suit is *actually* a suit against the State, at least initially. Moreover, even when courts have made such statements, their sole means of protecting the State's interest has been to carefully scrutinize official-capacity suits to determine whether they are in reality suits against the State.[47] Otherwise, the courts have hewed to the rule that an action against a public officer to obtain relief from an invalid act or from an abuse of authority by the officer or agent is not a suit against the State and is not prohibited by sovereign immunity.[48]

---

[45] *Idaho, supra* note 41, 521 U.S. at 278. See, also, *Anthony K., supra* note 41, 289 Neb. at 547, 855 N.W.2d at 795 ("[i]n an action for the recovery of money, the State is the real party in interest. . . . This is because a judgment against a public servant in his official capacity imposes liability on the entity that he represents") (internal quotation marks omitted).

[46] *Carter, supra* note 41, 181 Conn. App. at 642, 187 A.3d at 482. See, also, *Mortensen, supra* note 42, 69 Neb. at 385, 95 N.W. at 834 ("an action against state officers is an action against the [S]tate").

[47] See, e.g., *Stewart, supra* note 41, 563 U.S. at 256 ("[t]o be sure, we have been willing to police abuses of the doctrine that threaten to evade sovereign immunity. To do otherwise 'would be to adhere to an empty formalism'" (quoting *Idaho, supra* note 41)); *Antrican, supra* note 41, 290 F.3d at 185 (exception allowing official-capacity suits must be applied narrowly "'so as not unduly to erode the important underlying doctrine of sovereign immunity'").

[48] See, *Heist, supra* note 3; *Nebraska State Patrol, supra* note 41; *Gillpatrick, supra* note 43; *Anthony K., supra* note 41; *Zawaideh, supra* note 42; *Project Extra Mile v. Nebraska Liquor Control Comm.*, 283 Neb. 379, 810 N.W.2d 149 (2012), *overruled on other grounds, Griffith, supra* note 2; *Doe, supra* note 41; *Myers, supra* note 41; *Galyen, supra* note 42; *County of Lancaster, supra* note 41; *Concerned Citizens v. Department of Environ. Contr.*, 244 Neb. 152, 505 N.W.2d 654 (1993).

- 155 -

Nebraska Supreme Court Advance Sheets
317 Nebraska Reports
COMMUNITY CARE HEALTH PLAN OF NEB. v. JACKSON
Cite as 317 Neb. 141

While not inquiring into the legislative history of § 25-1902(1)(d) in our interpretation,[49] we are cognizant that members of the Legislature at the time of its adoption were concerned that the State's sovereign immunity would be effectively lost if the matter cannot be raised in an interlocutory appeal.[50] However, insofar as the State Officials' concerns involve taxpayer standing, other courts have observed that standing and sovereign immunity are "entirely distinct jurisdictional concepts."[51] With sovereign immunity, the issue is "what sovereign immunity permits," while with standing, the issue is what the "law of standing might preclude."[52] In particular, the focus of the standing inquiry is whether the plaintiff is the proper party to bring the claim.[53] To have standing, the plaintiff must have some legal or equitable right, title, or interest in the subject matter of the controversy.[54] This means that the question of standing is "often 'intertwined' with that of the merits" and, as such, it "can [be] and often is reviewed on appeal [of a final order]" without being effectively lost in the same way that sovereign immunity is.[55]

---

[49] Cf. *Nebraska Journalism Trust v. Dept. of Envt. & Energy*, 316 Neb. 174, 3 N.W.3d 361 (2024) (in order for court to inquire into statute's legislative history, statute's terms must require interpretation or be reasonably considered ambiguous).

[50] Floor Debate, L.B. 179, 106th Leg., 1st. Sess. (Apr. 24, 2019) (statement of Senator Michael Hilgers).

[51] *Grossman v. Wolfe*, 578 S.W.3d 250, 258 (Tex. App. 2019). See, also, *Odden v. Kotek*, No. 3:22-CV-1086-SI, 2023 WL 2071501 (D. Or. Feb. 17, 2023).

[52] *San Juan County, Utah v. U.S.*, 503 F.3d 1163 (10th Cir. 2007) (en banc). But see *Western Energy Alliance v. Zinke*, 877 F.3d 1157, 1165 (10th Cir. 2017) (recognizing *San Juan County, Utah* as having been "abrogated on other grounds").

[53] See *Preserve the Sandhills v. Cherry County*, 313 Neb. 590, 985 N.W.2d 599 (2023).

[54] See Neb. Rev. Stat. § 25-301 (Reissue 2016).

[55] *Williams v. Davis*, No. 22-30181, 2023 WL 119452 at *2 (5th Cir. Jan. 6, 2023).

## CONCLUSION

Because the State Officials' motion for summary judgment cannot be seen to have been based on the assertion of sovereign immunity, given their failure to assign any error as to the district court's ruling that Healthy Blue's claim was a claim against them in their official capacities and not a claim against the State, we dismiss the appeal for lack of jurisdiction.

APPEAL DISMISSED.

MILLER-LERMAN and PAPIK, JJ., not participating.